THE STATE OF OHIO, APPELLEE, *v.* CHANDLER, APPELLANT.

(No. 47871—Decided September 27, 1984.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Carter R. Dodge* and *Anthony A. Walsh,* for appellant.

JACKSON, J. Following trial by jury, appellant, Jeffrey Chandler, was convicted of one count of kidnapping (R.C. 2905.01), four counts of rape (R.C. 2907.02), four counts of gross sexual imposition (R.C. 2907.05), and one count of aggravated robbery (R.C. 2911.01). The

count of rape was merged with the count of kidnapping, under the allied offense statute (R.C. 2941.25). Appellant was sentenced to consecutive terms of imprisonment.

The state's evidence consisted of the testimony of the victim, Denise Porter, a videotape portraying Porter having sex with three men, and physical evidence seized from the apartment of Harold and Darryl Caldwell.

Porter testified that she attended a party the night of May 23-24, 1980, in the city of Cleveland. Following the party, at about three o'clock a.m., she rode downtown with some women friends (Porter is homosexual). Two of the women began to fight; Porter thought she saw one of them holding a gun, and she fled, leaving her shoes in the car. She was walking to a friend's apartment in the Town House Apartments, when a brown Cadillac pulled in front of her. Appellant was riding in the back seat of the car, and two brothers, Harold and Darryl Caldwell, were in the front seat. She was forced to enter the back seat with appellant. They asked if she was a prostitute. She said she was not; but they laughed and told her she was lying. The appellant then exited the car, pointed a gun at her, and told her she was coming with them.

The driver locked the doors automatically. The back windows were closed, and the front windows were open a little bit. According to the victim, the car stopped twice. Each time the Caldwells exited the car to speak with women, while appellant remained in the back seat with the victim. She did not try to escape because she knew appellant was armed.

At East 185th Street and Euclid Avenue, the victim and her assailants exited the car and walked toward an apartment building.[1] She attempted to pull away from them, but appellant grabbed her arm and led her into the building. She was taken into apartment 301, which had a striker on the door.

Her assailants offered her cocaine, which she refused; she saw the Caldwells use some. Harold Caldwell told her he would let her go only if she paid him money. When she stated that she had none, Harold Caldwell said he wanted sex with her.

The apartment contained a television camera and other video equipment. They told her that she was going to make a "video porno" for them, which they intended to sell. They offered her a Lone Ranger's mask; she declined to wear it.

After setting up the video equipment, they unclothed her, and disrobed themselves. They had placed three guns on the television set. She testified, "I was scared. I was crying. I thought they were going to hurt me."

The men performed numerous sex acts upon her; the appellant committed four such acts.[2] All of these acts were recorded on videotape, which was played for the jury. The victim identified her assailants, and described for the jury what they had done and said, as the forty-three minute tape was played in court.

The appellant and the Caldwells drove the victim to the Town House Apartments, and threatened her and her son with harm if she were to go to the police. The victim did not immediately call the police, out of fear that these threats would be carried out. Instead, she went to stay with her mother. Her

---

[1] She described the building as a red brick apartment house, with a fence and swimming pool. A junked automobile and a dumpster were situated near the entrance. They entered the building through a red steel door.

[2] Appellant committed two acts of fellatio and two acts of anal intercourse with the victim.

mother advised her to contact the Rape Crisis Center, which she did. The victim testified on direct examination that a "couple of days" after the rape, she contacted police.[3]

The victim accompanied police to the Caldwells' apartment on May 30, 1980. She accurately described the layout of the room; when the police gained entry, her description was confirmed. Harold Caldwell opened the door, and was identified by the victim. Video equipment and a gun were in plain view.

Frieda Smally, a female in the company of Caldwell, erased a small portion at the beginning of the tape, during the arrest. The police officers stopped the tape, rewound it, and seized it as material evidence. Appellant was arrested December 9, 1982.

The defense presented two witnesses. Richard Schultzaberger, the manager of the Town House Apartments, testified that the victim of the crime resided at the facility with Corethia Stewart. This contradicted the victim's testimony that she resided elsewhere,[4] and was only visiting Stewart at the Town House Apartments.

Harold Caldwell testified that the victim willingly came with them and engaged in the sexual acts before the camera for hire. Caldwell, though acquitted on the charges stemming from this case, had been convicted of eight other felony offenses.

Upon appeal appellant assigns five errors for review.

## I

Appellant's first assigned error charges that the court erred in overruling defendant's objection and allowing the prosecutor to have the victim of the crime stand next to the television monitor as the videotape of the rape was played.[5] This procedure conveniently allowed the witness to point out to the jury the persons involved, and to describe what each person did and said. This court finds no evidence in the record which indicates that this action by the trial court unfairly prejudiced the appellant. The only overt display of emotion by the victim referenced in the record occurred *after* the tape had been played.[6] The defense did not move for a mistrial on this occasion. The first assigned error is not well-taken.

## II

In his second assignment of error appellant contends that he was denied a fair trial by misconduct of the prosecutor.[7]

During closing argument the prosecutor employed degrading and inflammatory language, when he referred to the appellant as a "maggot." The defense objected; the trial court sustained the objection, and ordered the term "maggot" stricken from the record.

The prosecutor's conduct was un-

---

[3] On cross-examination, it was established that the victim contacted the Rape Crisis Center on May 27, and that she first contacted police on May 28, four days after the rape.

[4] On cross-examination, the victim testified that she had resided at five different locations over the preceding nine years.

[5] Assignment of Error No. 1
"The trial court committed prejudicial error in overruling defendant's timely objection to the irregular prosecutorial procedure of

demonstratively displaying in front of the jury the complaining witness observing and reacting to the videotape."

[6] The prosecutor stated to the witness "compose yourself," and the court ordered a short recess.

[7] Assignment of Error No. 2
"The defendant was denied a fair trial by the inflammatory misconduct of the prosecuting attorney in referring to the defendant as a 'maggot,' a 'creep,' and a 'vicious criminal.'"

professional and is deserving of a stern admonition. The term "maggot" is not comparable to the terms "liar," "crook," "executioner," "wheeler-dealer," or "con-man," approved in other cases cited by the state.[8] The word chosen by the prosecutor in the case at bar has no specific application. It conveys no proper information to the jury. It is nothing more than a general derogatory epithet. The use of such language serves only to subvert our trial system. The determination of facts is an exceedingly difficult task under normal circumstances. Just and accurate verdicts are likely to be rendered only if the jury is able to maintain objectivity. In this case, the prosecutor's comment certainly could not be construed as an aid to the achievement of objectivity by the jury.

The prosecutor's references to the appellant as a "creep" and a "vicious criminal" are also devoid of useful information, but this court does not consider such terms as inflammatory as the term "maggot."

The remainder of the prosecutor's closing argument is a fair discussion of the evidence, nor does other error appear on the record. This court is persuaded that the prosecutor's characterization of appellant as a "maggot," though erroneous and improper, does not under the circumstances warrant reversal of appellant's convictions. The second assigned error is not well-taken.

## III

In his third assigned error, appellant contends that he was denied a fair trial as a result of widespread pretrial publicity.[9]

Appellant made no motion for change of venue, nor a motion for mistrial, on the ground of prejudicial pretrial publicity. This matter may not be raised for the first time on appeal.[10] The third assigned error is not well-taken.

## IV

In his fourth assigned error appellant claims that the guilty verdicts were against the manifest weight of the evidence.[11]

The victim's testimony and the videotape of the rapes clearly establish appellant's guilt. Since appellant did not testify, the only evidence conflicting with the victim's version of the facts was Harold Caldwell's testimony. Caldwell was hostile and evasive toward the prosecutor, and contradicted himself several times on cross-examination. The jury did not find him credible. After a careful review of the entire record, this court concludes that the findings and verdict were not against the manifest weight of the evidence. The fourth assigned error is not well-taken.

## V

In his fifth assigned error the appellant's position is that in denying defendant's motion for a mistrial, the trial court erred.[12]

The trial court ordered counsel not to question Harold Caldwell concerning

---

[8] The state failed to cite the most recent decision of the Ohio Supreme Court on this subject, wherein the use of the terms "thugs" and "goons" in summation was disapproved. *State* v. *Liberatore* (1982), 69 Ohio St. 2d 583, 590.

[9] Assignment of Error No. 3
"The defendant was denied a fair trial as a result of widespread pretrial publicity calling for a conviction."

[10] In his brief on appeal, appellant cites this court a single newspaper article. The article is not included in the record.

[11] Assignment of Error No. 4
"The verdicts of guilty were contrary to the manifest weight of the evidence."

[12] Assignment of Error No. 5
"The trial court erred in denying defendant's motion for a mistrial."

his acquittal for the rapes in connection with this incident, and ordered Caldwell not to volunteer this information. Despite this order, Caldwell, during an argument with the prosecutor over the length of his sentences for unrelated convictions, stated that he had been acquitted. The jury was excused from the courtroom, and Caldwell was cited for contempt, provoking another outburst. The defense moved for a mistrial on the ground that the information conveyed by Caldwell "would not benefit" the appellant, and because the witness' statement and conduct were in violation of the court's order.

Caldwell was a witness for the defense. His inexcusable conduct cannot serve as grounds for mistrial. His statement, if taken into account by the jury, could only help the appellant. The fifth assigned error is not well-taken.

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

MARKUS, P.J., and PRYATEL, J., concur.