The STATE of Ohio, Appellee,

v.

**FRAMBACH et al., Appellants.**

[Cite as *State v. Frambach* (1992), 81 Ohio App.3d 834.]

Court of Appeals of Ohio,
Lorain County.

Nos. 91CA005226, 91CA005227.

Decided July 22, 1992.

*Gregory A. White,* Prosecuting Attorney, for appellee.

*Jack W. Bradley,* for appellant Frambach.

*Gary L. Carrothers,* for appellant Shanno.

REECE, Judge.

In this consolidated appeal, defendants-appellants, Elwin Henry Frambach and Anna M. Shanno, challenge their convictions in the Lorain County Court

of Common Pleas arising from a meat distribution operation. Both were indicted on March 19, 1991 and charged with adulteration and misbranding of food, R.C. 3715.52(A), possession of criminal tools, R.C. 2923.24(A), and trafficking and illegal use of food stamps, R.C. 2913.46(A). A joint trial to a jury was begun on July 25, 1991.

Frambach and Shanno were found guilty on all counts. The trial judge assessed fines and costs and placed both offenders on probation. This appeal follows.

## Facts

Investigator Timothy Gales of the Ohio Department of Agriculture was the prosecution's lead witness. He received a complaint against Frambach and Shanno, who were husband and wife. An undercover operation was then initiated.

On March 1, 1991, Gales went to Frambach's food processing facility to inquire whether he could purchase meat products. A microphone was concealed on his person and all his conversations were recorded. Frambach agreed to sell Gales a hog for $150. A book of United States Department of Agriculture ("USDA") food stamps valued at $65 was accepted as a down payment. Frambach warned that he needed the balance to be paid off in "green stuff," which Gales understood to mean cash.

Three days later, Gales returned to Frambach's plant. He met with Shanno, who advised him that the meat was ready. Gales paid her the amount due. He then asked whether he could purchase three goats. She agreed and took $105 worth of USDA food stamps from him. Shanno then delivered to Gales the hog which she had stored in a brown van.

On March 15, 1991, Gales went to the facility to get the goats. He met with Shanno, who directed him to Frambach. Gales paid Frambach an additional $90 in cash and took the meat. A balance was still due on the purchase price, however. Frambach offered to trade an automobile he owned for Gale's vehicle plus $300. Gales accepted and gave him $65 in USDA food stamps. Shanno counted the stamps herself.

A search warrant was secured for Frambach's residence and processing facility. Philip L. Bush of the Ohio Department of Agriculture testified that he accompanied several officers to the site. Bush took an array of photographs, which were admitted into evidence. The agents proceeded to impound meat, hides, tools, and other materials discovered during the inspection.

A Food Program Specialist with the United States Department of Agriculture, Ronald Morgan, took the stand on behalf of the prosecution. He

confirmed that Frambach, Shanno, and Frambach Farms were not authorized to either accept or possess food stamps in northern Ohio.

A variety of food and agricultural experts were presented by the prosecution. This testimony established that the meat purchased by Gales was sufficiently contaminated to pose a substantial health risk to any consumer. Scientific analysis of samples obtained during the search of Frambach's processing facility revealed that conditions were shockingly unsanitary.

To facilitate discussion, the various assignments of error have been rearranged and consolidated when appropriate.

### Frambach's Assignment of Error IV

"The trial court erred in overruling defendant's Rule 29 motion for acquittal on counts five and six of the indictment for the reason that section 3715.56 of the Revised Code was not complied with prior to appellant being indicted in violation of his constitutional rights to due process of law."

At the close of the state's case, Frambach moved to dismiss the charges of adulteration and misbranding of foods. R.C. 3715.52(A). This request was premised upon R.C. 3715.56, which provides:

"The attorney general, prosecuting attorney, or city director of law to whom the director of agriculture or the board of pharmacy reports any violation of sections 3715.01 and 3715.52 to 3715.72 of the Revised Code, shall cause appropriate proceedings to be instituted in the proper court without delay and to be prosecuted in the manner required by law. Before any violation of sections 3715.01 and 3715.52 to 3715.72 of the Revised Code, is reported to any such attorney for the institution of a criminal proceeding, the person against whom the proceeding is contemplated shall be given appropriate notice and an opportunity to present his views before the director or the board of pharmacy, either orally or in writing, in person, or by attorney, with regard to the contemplated proceeding."

■ A motion for acquittal will be sustained if the evidence presented is insufficient as a matter of law to permit a conviction. Crim.R. 29(A). The prosecution must prove every necessary element of the offense charged beyond a reasonable doubt. *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375. A trial judge may not withdraw the case from the jury, however, so long as *any* rational trier of fact could return a guilty verdict. *Jackson v. Virginia* (1979), 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–2789, 61 L.Ed.2d 560, 573–574; see, also, *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

■ The crime of adulteration and misbranding of food includes:

"The manufacture, sale, or delivery, holding or offering for sale of any food, drug, device, or cosmetic that is adulterated or misbranded[.]" R.C. 3715.52(A).

This section does not establish compliance with R.C. 3715.56 as an essential element of the offense. Conversely, R.C. 3715.56 does not purport to impose a condition precedent to a finding of a violation of R.C. 3715.52(A). At the very most, R.C. 3715.56 is a directory provision for which no specific means of enforcement have been supplied. A motion for acquittal therefore may not be predicated upon this statute.

■ Frambach seems to argue that his due process rights were violated by the supposed noncompliance with R.C. 3715.56. If, as he suggests, such neglect amounts to a fatal defect in the institution of his prosecution, he was required by Crim.R. 12(B)(1) to raise the issue before trial. Frambach does not suggest he addressed this constitutional challenge to the common pleas judge at any point in the proceedings. The matter is therefore deemed to be waived by operation of Crim.R. 12(G). See *State v. Moody* (1978), 55 Ohio St.2d 64, 9 O.O.3d 71, 377 N.E.2d 1008.

This assignment of error lacks merit.

### Frambach's Assignment of Error I

"The trial court committed reversible error in overruling appellant's motion to dismiss count one of the indictment on the basis that section 2923.24 of the Revised Code was unconstitutionally applied to him."

### Shanno's Assignment of Error I

"The court erred in failing to grant appellant's motion to dismiss count one of the indictment in that it unconstitutionally used section 2923.24 of the Revised Code to enhance the penalty to appellant for alleged violations of section 3715 [*sic*] of the Revised Code."

Throughout the trial, Frambach and Shanno repeatedly objected to the charges against them for possessing criminal tools. R.C. 2923.24(A) declares that:

"No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally."

This offense is punishable as a fourth degree felony. R.C. 2923.24(C). The prosecution argued to the jurors that Frambach and Shanno purposely used their meat processing equipment and van as part of their illegal enterprise.

Frambach and Shanno initially direct our attention to *State v. Volpe* (1988), 38 Ohio St.3d 191, 527 N.E.2d 818. In that case, the appellants were caught with betting machines and convicted of possessing criminal tools. They

argued that they should have been charged under the more specific prohibition, R.C. 2915.02(A)(5), which outlaws possession of gambling machines. A unanimous Supreme Court agreed:

"Given that the General Assembly clearly enacted R.C. 2915.02(A)(5) to reach criminal possession and control of a gambling device and classified such conduct as a misdemeanor of the first degree under R.C. 2915.02(F), we hold that R.C. 2923.24, a general statute prohibiting possession and control of criminal tools and classifying such conduct as a fourth degree felony, cannot be used to charge and convict a person of possessing and controlling a gambling device. * * *" *Id.* at 194, 527 N.E.2d at 821; see, also, *State v. Chandler* (1989), 54 Ohio App.3d 92, 560 N.E.2d 832; *State v. Farkas* (1989), 64 Ohio App.3d 224, 226–227, 580 N.E.2d 1154, 1155–1156.

█ In *State v. Chippendale* (1990), 52 Ohio St.3d 118, 120–121, 556 N.E.2d 1134, 1136–1137, the justices clarified that prosecution pursuant to a general statute is inappropriate *only* when the elements of the offenses correspond to such a degree that commission of the specific crime necessarily results in a commission of the general crime.[1] If the General Assembly has assigned a lesser penalty to the specific crime, legislative intent would be frustrated by pursuing punishment under the general crime. *Volpe,* 38 Ohio St.3d at 193–194, 527 N.E.2d at 820–821.

█ The instant case differs markedly from *Volpe.* We are not aware of, and the appellants do not cite, a specific prohibition against *possession* of meat processing and distribution equipment. Therefore, when such items are purposefully employed to further a crime, the perpetrator may be charged with the general offense of possessing criminal tools. See *Waynesville v. Combs* (1990), 66 Ohio App.3d 292, 296–297, 584 N.E.2d 9, 12–13.

The appellants mistakenly charge that the proscription against adulteration and misbranding of food is the specific statute which conflicts with the general criminal tools provision. It is readily apparent that the former, R.C. 3715.52, falls short of criminalizing the possession of equipment to facilitate an offense while the latter, R.C. 2923.24(A), may be directed at such. No conflict exists between these prohibitions, as one may surely commit adulteration and misbranding of food without necessarily employing criminal tools. See *State v. Cooper* (1990), 66 Ohio App.3d 551, 553, 585 N.E.2d 868, 869. When both statutes are violated, even during a single course of misconduct,

---

**1.** Of course, dual prosecution may be pursued even if the two crimes are indeed allied offenses of similar import so long as (1) the crimes were committed separately, or (2) a separate animus existed for each crime. *State v. Moss* (1982), 69 Ohio St.2d 515, 519, 23 O.O.3d 447, 449, 433 N.E.2d 181, 185; *Chippendale,* 52 Ohio St.3d at 120, 556 N.E.2d at 1136.

prosecution under each is justified. *United States v. Batchelder* (1979), 442 U.S. 114, 123–124, 99 S.Ct. 2198, 2203–2204, 60 L.Ed.2d 755, 764–765; *State v. Tolbert* (Apr. 3, 1991), Summit App. No. 14771, unreported, at 3–4, 1991 WL 49632.

■ Citing *State v. Gilham* (1988), 48 Ohio App.3d 293, 549 N.E.2d 555, the appellants further contend that application of the criminal tools statute to them violates the prohibition against cruel and unusual punishment. Eighth Amendment, United States Constitution; Section 9, Article I, Ohio Constitution. They argue that the prosecution unfairly elevated their crimes of adulteration and misbranding foods from a fourth degree misdemeanor, R.C. 3715.99(D), to a fourth degree felony by adding the charge of possessing criminal tools, R.C. 2923.24(C).

Obviously, the appellants are not attempting to invoke the Eighth Amendment's traditional protections against inhumane punishment or substantive limitations upon what conduct may be criminalized. See *Ingraham v. Wright* (1977), 430 U.S. 651, 666–668, 97 S.Ct. 1401, 1409–1411, 51 L.Ed.2d 711, 726–728. They base their contentions instead exclusively upon the standard of proportionality. The United States Supreme Court recognized in *Solem v. Helm* (1983), 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649, that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted."

Prior to *Solem*, this doctrine was applied only in cases involving unusual forms of incarceration, *Weems v. United States* (1910), 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793, or the death penalty, *Enmund v. Florida* (1982), 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140. In *Rummel v. Estelle* (1980), 445 U.S. 263, 274, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382, 391, the court refused to extend the proportionality principle to a common felony conviction, noting that "the length of the sentence actually imposed is purely a matter of legislative prerogative." (Footnote omitted.) See, also, *Hutto v. Davis* (1982), 454 U.S. 370, 374, 102 S.Ct. 703, 705, 70 L.Ed.2d 556, 560. *Solem* marks the first occasion where a majority of the justices agreed to reverse a felony sentence as being disproportional to the offense committed.[2]

This decision has recently come under attack. In *Harmelin v. Michigan* (1991), 501 U.S. ——, 111 S.Ct. 2680, 115 L.E.2d 836, the court was confronted with the question of whether a state could constitutionally punish possession of six hundred seventy-two grams of cocaine with a mandatory term of life in

---

**2.** The offender in that case had been ordered pursuant to a South Dakota recidivist statute to serve a life sentence without possibility of parole after perpetrating his seventh felony. *Solem*, 463 U.S. at 279–280, 103 S.Ct. at 3004–3005, 77 L.Ed.2d at 642–643.

prison without possibility of parole. In affirming the sentence, two justices argued for overruling *Solem*. Their lead opinion reasons:

" * * * The real function of a constitutional proportionality principle, if it exists, is to enable judges to evaluate a penalty that *some* assemblage of men and women *has* considered proportionate—and to say that it is not. For that real-world enterprise, the standards seem so inadequate that the proportionality principle becomes an invitation to imposition of subjective values." (Emphasis *sic.*) *Id.* at ——, 111 S.Ct. at 2697, 115 L.Ed.2d at 859.

Three other justices concurred in judgment on the grounds that the harsh sentence was not unwarranted in light of the gravity of the offense. *Id.* at ——-——, 111 S.Ct. at 2702–2709, 115 L.Ed.2d at 866–874 (Kennedy, J., concurring).

Since not enough votes were mustered to overturn *Solem*, we are still bound by that decision.[3] The justices admonished, however:

"Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." (Footnote omitted.) *Solem*, 463 U.S. at 290, 103 S.Ct. at 3009, 77 L.Ed.2d at 649; see, also, *Harmelin*, 500 U.S. at ——, 111 S.Ct. at 2703, 115 L.Ed.2d at 867 (Kennedy, J., concurring).

To warrant constitutional intercession, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 70, 30 O.O.2d 38, 39, 203 N.E.2d 334, 336; see, also, *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph three of the syllabus.

Returning to the facts before us, we doubt very seriously that there will be much public outcry in response to the supposedly "severe" sanctions imposed upon the appellants. The evidence established that the couple willfully profited from the sale of hazardous food products to economically disadvantaged and unsuspecting consumers. The considerable scale of their operations and the purposefulness of their actions were made all the more apparent by the discovery of the processing and delivery equipment in their possession. The jurors implicitly agreed that the appellants' conduct went beyond a few isolated sales of adulterated meat, comprising instead an ongoing enterprise made possible by the intentional use of tools of the trade to further a criminal

---

**3.** It does not appear that the Supreme Court of Ohio has acknowledged the proportionality principle with respect to our own Constitution. But, see, *State v. McDonald* (1987), 31 Ohio St.3d 47, 51–60, 31 OBR 155, 157–165, 509 N.E.2d 57, 60–67 (H. Brown, J., dissenting).

objective. So viewed, the inclusion of charges for possessing criminal tools was appropriate as a means of supplying a penalty which corresponded to the severity of the wrongdoings committed.

These assignments of error are overruled.

### Frambach Assignment of Error V

"The trial court erred in admitting into evidence a certified copy of a judgment entry that failed to state the crime that appellant was convicted of to establish a prior theft conviction."

■ When a trafficker in food stamps is found to have been convicted of a prior theft offense, the crime is elevated from a fourth to a third degree felony. R.C. 2913.46(C). To prove this element at trial, the prosecution introduced, over objection, a certified copy of Frambach's prior theft conviction. James R. Hoekstra of the Ohio Department of Agriculture described the exhibit to the jurors. This testimony was not refuted.

Frambach asserts that "R.C. 2945.75(B) provides the method for proving a prior conviction." That enactment states:

"Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction."

Frambach posits that the prosecution failed to comply with R.C. 2945.75, since the document submitted did not comport with the requirements for a judgment of conviction set forth in Crim.R. 32(B).

The fallacy in this reasoning is readily apparent, as R.C. 2945.75 sanctions merely one means of proving a prior conviction but not the only one. Hoekstra's uncontested avowal to the effect that Frambach had suffered "a prior theft conviction" was sufficient to allow the jurors to conclude beyond all reasonable doubt that this element of the offense had been established. *State v. Henderson* (1979), 58 Ohio St.2d 171, 173, 12 O.O.3d 177, 178, 389 N.E.2d 494, 495.

This assignment of error lacks merit.

### Frambach's Assignment of Error II

"The prosecutor improperly placed the burden of proof upon the appellant thereby denying him the right to a fair trial."

### Shanno's Assignment of Error III

"Appellant was denied a fair trial when the state through the prosecutor improperly shifted the burden of proof to the appellant."

■ Both appellants argued the defense of entrapment. They complain on appeal that during the prosecutor's discussion of the issue in closing argument, he improperly advised the jurors that: (1) by arguing entrapment the appellants admitted their actions, and (2) this defense must be proven beyond a reasonable doubt.

■ A review of the record confirms that these protests are unfounded. This court described the defense of entrapment in *State v. Johnson* (1982), 4 Ohio App.3d 308, 310, 4 OBR 559, 561, 448 N.E.2d 520, 522:

"Entrapment is a 'confession and avoidance' defense in which the defendant admits committing the acts charged, but claims that the criminal design arose with the state's agent. * * * The primary consideration in any determination of entrapment is the defendant's predisposition to commit the crime." (Citations omitted.)

The prosecutor did not deviate in his recital of this standard in closing arguments. Moreover, he expressly conceded to the jurors that entrapment need only be proven by a preponderance of the evidence. R.C. 2901.05(A). The prosecutor did misspeak at one point in his argument by intimating that the reasonable doubt standard applied to the affirmative defense. Nevertheless, neither appellant raised an objection which would have allowed the mistake to be promptly corrected. The matter is therefore waived. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus.

These assignments of error are overruled.

### Frambach's Assignment of Error III

"Appellant was denied a fair trial by inflammatory misconduct of the prosecutor during opening and closing arguments."

Prior to trial, the court was asked to instruct the prosecutor not to discuss how Frambach had run his "operation for a number of years and how he's been poisoning the community." Frambach's attorney noted that "[w]e are here for a specific crime during a specific period of time." In accordance with Evid.R. 404(B), the court granted this motion *in limine.*

■ During opening statements, the prosecutor described Frambach's facility as an "absolutely unsanitary, disgusting cesspool." An objection was raised and the prosecutor was advised to "stay away from those very descriptive words." After both sides had presented their evidence to the jury, the following exchange took place during the prosecution's closing argument:

"[By the Prosecution]:

" * * * [T]his is, obviously, the most unwholesome, insanitary, bordering on a cesspool operation that—

"[Defense Counsel]: Objection.

"[Prosecution]:—you will probably ever see.

"THE COURT: Sustained. Mr. [Prosecutor], stop the editorializing.

"[Prosecution]: Well, you may refer to that as editorializing; but, what do you call an operation that is ladened with rat feces, mice feces, dead mice, rotten meat, rotten goat head lying right on the table? Some may term it editorializing; others may find it is an accurate description of what is going on here."

■ Once Frambach had been found guilty of the crimes charged, he requested a new trial on the grounds that the prosecutor had employed "exaggerated language" during arguments. This motion was rejected. On appeal, a denial of an application for a new trial will be overturned only when an abuse of discretion has been established. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus. Such occurs in those rare instances where the judge's attitude was manifestly unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.

■ Frambach cites three opinions to support his proposition that the prosecutor's resort to supposedly derogatory epithets deprived him of his right to a fair trial. *State v. Liberatore* (1982), 69 Ohio St.2d 583, 23 O.O.3d 489, 433 N.E.2d 561; *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883; *State v. Chandler* (1984), 19 Ohio App.3d 109, 19 OBR 197, 483 N.E.2d 192. In each instance, misleading slurs were made which went well beyond the evidence presented. We can discern no such unwarranted embellishment in the case *sub judice*. The expert testimony and photographic array confirm that the prosecutor accurately described the wretched conditions at the facility. As the state's advocate, the prosecutor is free during summation, within reason, to candidly characterize the evidence in a manner which advances his or her case. See *Zell v. State* (1922), 15 Ohio App. 446, 452–453; 27 Ohio Jurisprudence 3d (1981) 182, Criminal Law, Section 951.

■ Frambach further complains that the prosecutor called him a "crook." A review of the transcript reveals that a reference was simply made to what a "reasonably prudent crook" would do with the illegally procured food stamps. The comment was not directed specifically at Frambach. Moreover, the trial judge instructed the jurors, after an objection was voiced, to "[d]isregard the word crook." We must presume that this admonishment was followed. *State v. Fox* (1938), 133 Ohio St. 154, 160, 10 O.O. 218, 221, 12 N.E.2d 413, 416.

Finally, we can find no compelling reason to believe that the mere mention of this term adversely affected Frambach's guarantee of a fair trial. *Smith*, 14 Ohio St.3d at 14, 14 OBR at 318, 470 N.E.2d at 885; *Chandler*, 19 Ohio App.3d at 112, 19 OBR at 199, 483 N.E.2d at 195.

This assignment of error is not well taken.

### Shanno's Assignment of Error II

"The verdict of the jury is against the weight of the evidence as to count two of the indictment, that appellant did knowingly, possess, buy, sell, use, alter, accept or transfer food stamp coupons on or about March 1, 1991 and the court erred in failing to dismiss count two of the indictment as the state failed to meet its burden of proof."

Shanno was charged with two separate counts of trafficking and illegal use of food stamps. She does not challenge the jury's verdict with respect to her acceptance of food stamps from Investigator Gales on March 4, 1991. Shanno does question whether she could be convicted for a second such offense.

R.C. 2913.46(A) declares that:

"No individual shall knowingly possess, buy, sell, use, alter, accept, or transfer food stamp coupons in any manner not authorized by the 'Food Stamp Act of 1977,' 91 Stat. 958, 7 U.S.C. 2011, as amended."

Investigator Gales testified that on March 15, 1991, Shanno counted the food stamps he paid for the purchase of the automobile. Sufficient evidence was therefore presented to support a finding beyond reasonable doubt that Shanno had violated R.C. 2913.46(A) a second time. See, generally, *Jackson*, 443 U.S. at 318–319, 99 S.Ct. at 2788–2789, 61 L.Ed.2d at 573–574; *Jenks* at paragraph two of the syllabus. In addition, there is no reason to believe that the jurors' verdict was contrary to the manifest weight of the evidence. See, generally, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218, 485 N.E.2d 717, 720.

This court is mindful that the original indictment indicated that Shanno committed the offenses "on or about" March 1, 1991 and March 4, 1991. As a general rule, "the exact date and time are immaterial" in a criminal charge. *Tesca v. State* (1923), 108 Ohio St. 287, 140 N.E. 629, paragraph one of the syllabus. No objection was raised, moreover, when Investigator Gales described the infraction which took place on March 15, 1991. Shanno does not suggest she was misled or prejudiced by this variance. Crim.R. 33(E)(2); R.C. 2945.83(B).

This final assignment of error is also not well taken. Both judgments of conviction of the common pleas court are affirmed in all respects.

*Judgments affirmed.*

CACÏOPPO, J., concurs.

QUILLIN, P.J., concurs in judgment only.