OPINION
Defendant-Appellant, Jeffery Harrington ("Appellant"), appeals a judgment of conviction and sentence entered by the Logan County Common Pleas Court finding him guilty of menacing by stalking, in violation of R.C. 2903.211. Appellant contends there was insufficient evidence to prove that he was previously convicted of menacing by stalking, a necessary element to uphold Appellant's conviction, and that the trial court allowed the admission of unduly prejudicial other acts evidence at trial, violating Evid.R. 404(B). We find that there was insufficient evidence to establish beyond a reasonable doubt that Appellant had been found guilty of a prior crime because the evidence of Appellant's prior conviction was limited to an incomplete judgment entry and testimony from a witness who did not identify Appellant in order to link him to a prior conviction. Additionally, although testimony was required to establish a prior conviction, the trial court allowed prejudicial details of Appellant's alleged prior conviction to be put before the jury in contravention of Evid.R. 404(B). Accordingly, we must reverse the decision of the trial court.
The facts leading to this appeal are as follows. In March 1999, Linda Wygle ("Wygle") purchased a tract of land with hopes of constructing a home. Prior to beginning construction, Wygle resided in a trailer on the property as she developed her plans for construction. Thereafter, she met Appellant and hired him to do various jobs on her land. As the two became better acquainted, Appellant expressed his desire to begin his own construction company and offered to be Wygle's general contractor for the building of her home free of charge, which would not only help Wygle get the necessary construction loan for her property but would also benefit Appellant by contributing to a potential portfolio for his contemplated business. Wygle accepted Appellant's offer and gave Appellant the authority to make draws from a subsequently established construction account.
Construction began in April 2000, and prior to that time, Wygle had begun residing with her boyfriend. Thereafter, in early June 2000, when Appellant told her he had been kicked out of his parents' house, Wygle allowed him to stay in her trailer at the construction site. In mid-June, Wygle learned that Appellant had told people that he and Wygle were dating, were soon to be married, and were building the house for their marital residence. Wygle confronted Appellant with this information, which he denied, and told him to vacate her trailer and that she would find another contractor. Appellant acquiesced and vacated the trailer, leaving Wygle a letter, which she believed contained romantic overtones.
Thereafter, Wygle confronted Appellant about money missing from the construction account, and eventually he confessed to taking it. On June 28, 2000, Wygle was again told that Appellant was spreading rumors about their alleged romantic involvement, and upon confronting him about it the following day, Appellant became angry and made threatening statements concerning her property. The next morning, Appellant was waiting in the parking lot at Wygle's work and handed her an apologetic letter. At that time, Wygle agreed to meet Appellant to discuss some unresolved issues related to the building project.
Wygle's testimony at trial indicates that during this meeting Appellant expressed his romantic feelings for Wygle and told her she needed to reciprocate "or else." Subsequently, on July 9, 2000, Appellant arrived at Wygle's boyfriend's house late in the evening and was loudly demanding that he see Wygle. Upon her refusal, Appellant said "[s]he'll be sorry she ever met me." Appellant then made threatening phone calls to Wygle and her boyfriend at their places of employment. However, at no time did Appellant's threats specify that he would physically harm anyone. According to Wygle's testimony, following these actions Appellant trespassed upon her property, continually followed her, and made gestures with his hands as if he was firing a gun at her. Wygle also stated that Appellant's behavior caused her to have health problems and that she was in constant fear.
On July 19, 2000, a complaint was filed, alleging that Appellant was guilty of menacing by stalking due to his actions between July 10 and July 17, 2000. On November 14, 2000, Appellant was indicted by the Logan County Grand Jury. The matter proceeded to trial, whereupon a guilty verdict was returned against Appellant for violating R.C. 2903.211, menacing by stalking. The offense was a fourth degree felony based upon a previous January 17, 2000 menacing by stalking conviction; consequently, Appellant was sentenced to eighteen months in prison and ordered to pay $1,594.80 in restitution.
From his conviction and sentence, Appellant appeals raising five assignments of error for our review. However, because we find Appellant's first two assignments to be dispositive of this appeal, we decline to address his further arguments.
 Assignment of Error I In violation of due process, Mr. Harrington was found guilty of menacing by stalking on insufficient evidence and his verdict was entered against the manifest weight of the evidence.
In his first assignment of error, Appellant contends that the evidence presented at trial was insufficient to prove that he acted knowingly, that he engaged in a pattern of conduct, that his actions caused the victim mental distress, or that he was convicted of menacing by stalking in a previous case. Moreover, Appellant contends that because the evidence was insufficient in these respects, the jury's guilty verdict contravened the manifest weight of the evidence. Because we find that there was insufficient evidence to prove Appellant's prior conviction, which is dispositive of the issues raised within this assignment of error, we sustain Appellant's first assignment of error and limit our discussion accordingly.
To reverse a conviction for insufficient evidence, we must be persuaded, after viewing all of the evidence in a light most favorable to the prosecution, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[1]
R.C. 2903.211(A), menacing by stalking, provides: "No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." While the offense is a first degree misdemeanor, menacing by stalking may be enhanced to a fourth degree felony if the offender has previously been convicted of the same offense.[2] When a prior offense acts to transform a crime by increasing its degree, the prior offense becomes an element of the crime and must be proven by the State beyond a reasonable doubt.[3]
R.C. 2945.75(B) mandates that whenever a case necessitates proof of a prior conviction, "a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case * * * is sufficient to prove such prior conviction." Ohio courts have held that R.C. 2945.75
provides one means of proving a prior conviction but not the only one.[4]
These cases indicate that despite a technical error in a judgment entry or in absence of one, the State can prove existence of a prior conviction through testimony at trial that links the defendant to a prior conviction.[5]
To establish the existence of a prior conviction herein, the State admitted a Union County judgment entry bearing a charge of menacing by stalking and the name "Jeffery W. Harrington" and testimony from Christina Terry ("Terry"), the complaining party of the crime referenced in the judgment entry. The entry, however, did not contain the jury's verdict of guilt or the court's findings, making it incomplete according to Crim.R. 32(C), which states, "a judgment of conviction shall set forth the plea, the verdict or findings, and the sentence." Moreover, while Terry testified that she was the complaining party in the menacing by stalking case represented by the judgment entry and that a "Mr. Harrington" was convicted of the charge, she never made an in-court identification of Appellant to connect him to the prior conviction.
This court has held that while a name contained in a previous judgment entry may be the same as a defendant in a subsequent trial leading to a possible inference of identity, any inference remains highly speculative.[6] Moreover, courts explain that the fact that a current defendant has the same name as the defendant in a previous case "means little in and of itself."[7] Therefore, names alone are not reliable, and apparently the legislature recognized the problem in adopting R.C. 2945.75(B), which indicates that there must be "sufficient evidence to identify the defendant named in the entry."[8]
Unlike cases in which documentary evidence contained additional personal identifiers, which corresponded to the defendant at trial,[9]
cases where the defendant admitted to a prior conviction,[10] and cases where a witness identified the defendant as the same person convicted in a prior case,[11] this case is devoid of direct evidence that Appellant herein is the same Jeffery Harrington listed in the judgment entry or mentioned throughout Terry's testimony. Consequently, because the State was required to prove that Appellant was previously convicted of menacing by stalking beyond a reasonable doubt,[12] we find that there was insufficient evidence to support Appellant's conviction of the fourth degree felony offense.
Accordingly, Appellant's first assignment of error is sustained.
 Assignment of Error II The trial court erred in admitting evidence of prior bad acts that were more prejudicial than probative.
Pursuant to Evid.R. 404(B), Appellant challenges the trial court's admission of other acts evidence elicited from Terry's testimony. As an initial matter, we note that evidentiary rulings are within the broad discretion of the trial court and will be the basis for reversal only on an abuse of discretion that amounts to prejudicial error.[13] An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable.[14] When applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court.[15]
Generally, in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial, are inadmissible.[16] Exceptions to this general rule are limited by Evid.R. 404(B) to instances where the probative value of the evidence is sufficient to allow its admission.[17] Evid.R. 404(B) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[18],
Accordingly, extrinsic acts may not be used to prove the inference that the accused acted in conformity with his other acts or that he has a propensity to act in such a manner.[19] Although Evid.R. 404(B) permits "other acts" evidence for certain enumerated issues, "the standard for determining admissibility of such evidence is strict."[20]
At trial, Terry testified in great detail about Appellant's alleged past actions towards her. Before allowing Terry's testimony, the trial court admonished the jury that her version of events could only be used to decide that Appellant acted "knowingly" to commit the current charge. For the following reasons, we find the trial court abused its discretion in allowing such an extensive narration of Appellant's alleged behavior in an unrelated case.
Herein, a complete and extensively detailed recitation of the facts in the prior case was put before the jury. The trial court's instruction that the evidence could only be used to prove Appellant acted "knowingly" arguably falls within one of the listed exceptions to the admission of other acts evidence under Evid.R. 404(B), i.e., "knowledge" that his actions would result in Wygle's fear that he would cause her physical harm or that his actions would cause her mental distress. However, while Terry's testimony may very well establish that the perpetrator in her case acted knowingly, it does not necessarily provide a reciprocal conclusion that Appellant knew his actions would cause a similar reaction with a different person in an unrelated case.
Consequently, we conclude that the introduction of the details surrounding the Terry case was highly prejudicial to Appellant and may have unduly influenced the jury to convict Appellant of the present offense based upon alleged past, unrelated behavior.[21] "Such influence is precisely the reason that the evidence of prior wrongdoing is inadmissible, even if relevant."[22] This Court has noted that "extrinsic act evidence is excluded not because it has no appreciable probative value, but because it has too much."[23] Although Terry's testimony was permissible to establish that Appellant was convicted of a prior crime, the State must do so in such a manner as not to allow the jury to be prejudicially influenced by details of the prior crime, thereby causing the jury to convict the defendant on the basis of a prior crime and not on the basis of the evidence before it on the present crime.[24] Therefore, although the State was permitted, indeed required, to produce evidence of a prior conviction in order to prove an element of the crime Appellant was charged with, permitting Terry to elaborate on the intricate details served only to unfairly prejudice the jury against Appellant, suggesting an inference that Appellant had a propensity to commit the crime for which he was charged.[25]
Consequently, we find Appellant's second assignment of error has merit and must be sustained.
Having found error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby reversed.
Judgment reversed and cause remanded.
SHAW, P.J., and HADLEY, J., concur.
[1] State v. Thompkins (1997), 78 Ohio St.3d 380, 386; State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith
(1997), 80 Ohio St.3d 89.
[2] R.C. 2903.211(B)(1), (2)(a).
[3] State v. Allen (1987), 29 Ohio St.3d 53, 53-54; State v. Gordon
(1971), 28 Ohio St.2d 45, 48; State v. Chaney (1998), 128 Ohio App.3d 100,104; State v. Jarvis (Dec. 23, 1999), Portage App. No. 98-P-0081, unreported.
[4] Chaney, 128 Ohio App.3d at 105; State v. Frambach (1992),81 Ohio App.3d 834, 843; State v. Jarvis (Dec. 23, 1999), Portage App. No. 98-P-0081, unreported; State v. Pisarkiewicz (Oct. 18, 2000), Medina App. No. C.A.2996-M, unreported.
[5] Id.
[6] State v. Newton (June 19, 1984), Auglaize App. No. 2-83-20, unreported.
[7] In re Lipford (Dec. 24, 2001), Carroll App. No. 01 AP 756, unreported, citing State v. O'Neil (1995), 107 Ohio App.3d 557,560.
[8] O'Neil, 107 Ohio App.3d at 561.
[9] Chaney, 128 Ohio App.3d at 105; State v. Perkins (June 22, 1998), Madison App. No. CA97-10-047, unreported; State v. Jarvis
(Dec. 23, 1999), Portage App. No. 98-P-0081, unreported.
[10] Chaney, 128 Ohio App.3d at 105; State v. Jarvis (Dec. 23, 1999), Portage App. No. 98-P-0081, unreported; State v. Pisarkiewicz (Oct. 18, 2000), Medina App. No. C.A.2996-M, unreported.
[11] State v. Gantzler (Apr. 3, 1991), Crawford App. No. 3-90-10, unreported; State v. Walton (Feb. 23, 1990), Wyandot App. No. 16-88-25, unreported.
[12] Allen, 20 Ohio St.3d at 53-54; Gordon, 28 Ohio St.2d at 48;Chaney, 128 Ohio App.3d at 104; State v. Jarvis (Dec. 23, 1999), Portage App. No. 98-P-0081, unreported.
[13] State v. Newcomb (Nov. 27, 2001), Logan App. No. 8-01-07, unreported, citing State v. Graham (1979), 58 Ohio St.2d 350, 352.
[14] Blakemore v. Blakemore (1983), 53 Ohio St.3d 217, 219.
[15] Berk v. Matthews (1990), 52 Ohio St.3d 161, 169.
[16] State v. Smith (1990), 49 Ohio St.3d 137, 139; State v. Wilkinson
(1980), 64 Ohio St.2d 308, 314.
[17] Smith, 49 Ohio St.3d at 139.
[18] Evid.R. 404(B) (emphasis added).
[19] Smith, 49 Ohio St.3d at 140.
[20] State v. Broom (1988), 40 Ohio St.3d 277, 281-82.
[21] See State v. Sutherland (1994), 92 Ohio App.3d 840, 847.
[22] Id.
[23] Id., quoting Weissenberger's Ohio Evidence, Section 404.22.
[24] State v. Blonski (1997), 125 Ohio App.3d 103, 109.
[25] Sutherland, 92 Ohio App.3d at 847-48. Cf. State v. Settles (May 13, 1999), Seneca App. No. 13-98-63, unreported.