[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 320.]

THE STATE OF OHIO, APPELLEE, *v*. CAMPBELL, APPELLANT.

[Cite as *State v. Campbell*, 2000-Ohio-183.]

*Criminal law—Aggravated murder—Death penalty vacated and cause remanded to trial court for further proceedings when trial court fails to comply with Crim.R. 32(A)(1)—When imposing sentence, trial court must address defendant personally and ask whether he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment—Crim.R. 32(A)(1) applies to capital and noncapital cases—When trial court imposes sentence without first asking defendant whether he or she wishes to exercise right of allocution created by Crim.R. 32(A), resentencing is required unless error is invited or harmless error.*

1.  Pursuant to Crim.R. 32(A)(1), before imposing sentence, a trial court must address the defendant personally and ask whether he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment.

2.  Crim.R. 32(A)(1) applies to capital cases and noncapital cases.

3.  In a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless the error is invited error or harmless error.

(No. 98-980—Submitted May 24, 2000—Decided December 20, 2000.)

APPEAL from the Court of Common Pleas of Franklin County, No. 97CR-04-2020.

_____

{¶ 1} Appellant, Alva E. Campbell, Jr., appeals his conviction of, and death sentence for, the aggravated murder of Charles Dials.

**{¶ 2}** In 1972, Campbell was convicted of murder in the first degree under former R.C. 2901.01 and sentenced to life imprisonment. Twenty years later, he was paroled. In 1997, Campbell was arrested in Franklin County on a charge of aggravated robbery. He was held at the Jackson Pike Jail pending arraignment.

**{¶ 3}** On April 2, 1997, Deputy Sheriff Teresa Harrison was assigned to take Campbell to court, a task complicated by Campbell's confinement to a wheelchair. Two weeks before, jail doctors had wrongly diagnosed Campbell as having "hysterical paralysis"; in fact, he was faking. Not knowing this, however, Harrison placed Campbell in a van and drove him into downtown Columbus.

**{¶ 4}** Around 12:30 p.m., Charles Dials was paying a ticket at the traffic bureau of the Franklin County Municipal Court.

**{¶ 5}** At about the same time, Deputy Harrison was parking the van in a loading dock at the courthouse. Harrison got out of the van and began to assist Campbell. Suddenly, Campbell attacked her. He beat her severely, stole her service pistol, and fled.

**{¶ 6}** Charles Dials had just left the traffic bureau and was driving west on Fulton Street when Campbell ran outside. Campbell dashed into the street, stopped Dials's truck, and pulled open the driver's door. He told Dials, "I don't want to hurt you; just move over." And Campbell drove off, with Dials his prisoner.

**{¶ 7}** Campbell drove to a K-Mart at Williams Road and South High Street. He parked there and talked with Dials, telling him not to be nervous. Then he drove back to Central Avenue, turned onto a side street, and parked near a factory. There, Campbell took Dials's money and made Dials exchange clothes with him.

**{¶ 8}** Next Campbell drove back to High Street, where he bought a forty-ounce bottle of beer at a drive-through. He then returned to the K-Mart. There he sat talking with Dials "probably a good 2 hours," according to his confession.

**{¶ 9}** When a helicopter circled overhead, Campbell became nervous and turned on the radio to hear the news. An announcer reporting on the escape

mentioned that Campbell had commandeered a red truck. Dials said, "That's you, ain't it?" Campbell admitted it was, and they talked a while longer.

{¶ 10} Campbell then moved the truck behind the K-Mart, driving around the back lot three times before he finally chose a parking space. He said, "Charlie, I got to get another car." Then he told Dials to "get on the floor board of his truck." Dials obeyed, and Campbell shot him twice: once in the face and once in the neck. The shots were fired from at least six inches away, but no more than two or three feet. Campbell tried to cover the corpse with Dials's coat.

{¶ 11} Campbell then drove around to K-Mart's main lot and waited. While he sat waiting, Katie Workman drove in. She parked near the truck and began to get out of her car. As she opened her door, Campbell ran up to her car and put the gun to her head. "Move over * * *," he said. "I've just killed one man." Workman moved over, and Campbell screamed, "Give me your money, your keys." Workman threw her wallet and keys at Campbell and jumped out of the car. Campbell immediately drove away and went to the nearby Great Southern Shopping Center.

{¶ 12} Around 3:20 or 3:30 p.m., James Gilliam was parked outside the Body Fit gym at the Great Southern, waiting for someone. When Campbell arrived, Gilliam was sitting in his car with the door open. Campbell forced his way into the space between Gilliam's car and another car.

{¶ 13} Suddenly, Gilliam felt the car door pressing against his legs. Then he felt a gun against his head and heard a man say: "[D]o you want to die? Get in the car and move over." Gilliam looked up and saw a man he later identified as Campbell.

{¶ 14} Gilliam pushed the door back at Campbell and stood up. Campbell said, "Get in the car and move over. I've done killed two people, and I'm not afraid to do it again." Gilliam backed away, then turned and ran.

**{¶ 15}** Gilliam's keys weren't in the ignition, so Campbell jumped back into Workman's car. He drove around for a while, at one point buying another forty-ounce beer at a drive-through. Campbell drove off in haste, then abandoned the car in an alley and fled on foot. Campbell hid in a tree, but the tree's owner saw and reported him. Police soon surrounded the tree.

**{¶ 16}** Seeing now that he was cornered, Campbell dropped the gun and surrendered. At 9:00 p.m., detectives from the Columbus Police Department and the Franklin County Sheriff's Office interrogated him on videotape. He gave the detectives a lengthy and detailed confession.

**{¶ 17}** Campbell was indicted on four counts of aggravated murder. Count One charged aggravated murder under R.C. 2903.01(A) (prior calculation and design). Counts Two through Four charged aggravated murder under R.C. 2903.01(B) (felony-murder): Count Two was predicated on murder during an aggravated robbery, Count Three on murder during a kidnapping, and Count Four on murder during an escape. Each aggravated murder count carried four death specifications: murder to escape detection, R.C. 2929.04(A)(3); felony-murder predicated on aggravated robbery, R.C. 2929.04(A)(7); felony-murder predicated on kidnapping, R.C. 2929.04(A)(7); and having a prior murder conviction, R.C. 2929.04(A)(5). The indictment contained ten other counts: four counts of aggravated robbery, two counts of attempted kidnapping, and one count each of kidnapping, felonious assault, escape, and having a weapon under disability.

**{¶ 18}** Campbell was convicted of all counts and specifications, but the trial judge merged the (A)(3) specifications into the felony-murder specifications. Thus, only three specifications were presented to the jury in the penalty phase. After a mitigation hearing, the jury recommended death. The trial judge merged the aggravated murder counts and sentenced Campbell to death on Count Three.

**{¶ 19}** This cause is now before this court upon an appeal as of right.

_____

*Ron O'Brien*, Franklin County Prosecuting Attorney, and *Steven L. Taylor*, Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker*, Ohio Public Defender, *Joseph E. Wilhelm*, Appellate Supervisor, Death Penalty Division, and *Kelly Culshaw*, Assistant State Public Defender, for appellant.

_____

**MOYER, C.J.**

{¶ 20} Campbell raises twenty-three propositions of law for our consideration. Finding no infirmity attaching to his conviction, we affirm it. However, a procedural error in Campbell's sentencing requires correction. We must therefore remand this cause to the trial court for resentencing.

I. Failure to Advise of Right to Allocution

{¶ 21} In his first proposition of law, Campbell contends that the trial court violated Crim.R. 32(A)(1) by sentencing him for aggravated murder without advising him of his right to allocution. This proposition has merit.

{¶ 22} After the penalty phase, the trial court heard arguments from counsel, set a sentencing date, and discussed procedures. The judge said: "I'll * * * render my decision and then I assume, once I've rendered my decision on [the aggravated murder counts], *then* there will be a sentencing where you will be able to make statements * * *." (Emphasis added.) The prosecutor asked whether Campbell would "have an allocution right before the Court announces its sentencing decision." Defense counsel stated: "*After* you've made your decision on Counts One through Four, *then* I think we have a right to make a statement in allocution as to the sentences on the *other* offenses." (Emphasis added.)

{¶ 23} On April 3, 1998, the trial court sentenced Campbell to death on Count Three. On that date, Crim.R. 32(A)(1) provided: "Before imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and also shall address the defendant personally and ask if he or she wishes to make

a statement in his or her own behalf or present any information in mitigation of punishment."[1] The trial court did not ask Campbell if he wished to make a statement or present further information before sentencing him on Count Three.

{¶ 24} This omission clearly violated the requirements of Crim.R. 32(A)(1). Pursuant to Crim.R. 32(A)(1), before imposing sentence, a trial court must address the defendant personally and ask whether he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment. Crim.R. 32(A)(1) applies to capital cases and noncapital cases. *State v. Reynolds* (1998), 80 Ohio St.3d 670, 684, 687 N.E.2d 1358, 1372-1373.

{¶ 25} The state invokes the doctrines of invited error, waiver, and harmless error. We examine each in turn.

*Invited Error*

{¶ 26} The doctrine of invited error holds that a litigant may not "take advantage of an error which he himself invited or induced." *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, paragraph one of the syllabus. The state contends that Campbell's counsel invited the error by stating: "After you've made your decision on [the capital counts], then I think we have a right to make a statement in allocution as to the sentences on the other offenses."

{¶ 27} However, the record does not show that defense counsel "induced" or "was actively responsible" for the trial court's error. *State v. Kollar* (1915), 93 Ohio St. 89, 91, 112 N.E. 196, 197. This court has found invited error when a party has asked the court to take some action later claimed to be erroneous, or affirmatively consented to a procedure the trial judge proposed. See, *e.g.*, *Hal Artz*, 28 Ohio St.3d at 28, 28 OBR at 89, 502 N.E.2d at 596, fn. 16; *State ex rel. Lowery v. Cleveland* (1993), 67 Ohio St.3d 126, 128, 616 N.E.2d 233, 234; *State v.*

---

1. The 1998 amendments to Crim. R. 32(A) did not affect the substance of this provision.

*Wigglesworth* (1969), 18 Ohio St.2d 171, 180-181, 47 O.O.2d 388, 393, 248 N.E.2d 607, 614.

{¶ 28} But defense counsel did not suggest, request, or affirmatively consent to this procedure. It was the judge who first said he would sentence on the capital counts before any allocution. At worst, counsel acquiesced. But invited error must be more than mere "acquiescence in the trial judge's erroneous conclusion." *Carrothers v. Hunter* (1970), 23 Ohio St.2d 99, 103, 52 O.O.2d 392, 394, 262 N.E.2d 867, 869.

*Waiver*

{¶ 29} Alternatively, the state contends that Campbell's failure to object at the sentencing hearing waived the issue, which means that an error would be cognizable only if it amounted to plain error. Ordinarily, a defendant does waive an error if he has not objected to it at trial. See, *e.g.*, *State v. Williams* (1977), 51 Ohio St.2d 112, 116-117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367; *State v. Campbell* (1994), 69 Ohio St.3d 38, 40-41, 630 N.E.2d 339, 344-345.

{¶ 30} However, in this context, we find the doctrine of waiver inapplicable. Crim.R. 32(A)(1) specifically provides that before imposing sentence, "the court *shall* * * * address the defendant personally" and inquire as to whether the defendant wishes to exercise his or her right to allocution. The rule does not merely give the defendant a right to allocution; it imposes an affirmative requirement on the trial court to "ask if he or she wishes to" exercise that right.

{¶ 31} This court has "consistently required strict compliance with Ohio statutes when reviewing the procedures in capital cases." *State v. Filiaggi* (1999), 86 Ohio St.3d 230, 240, 714 N.E.2d 867, 877, citing *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766, paragraph one of the syllabus. Moreover, "[w]e have repeatedly recognized that use of the term 'shall' in a statute or rule connotes the imposition of a mandatory obligation unless other language is included that

7

evidences a clear and unequivocal intent to the contrary." *State v. Golphin* (1998), 81 Ohio St.3d 543, 545-546, 692 N.E.2d 608, 611.

{¶ 32} Of course, once the trial court has asked the defendant if he or she wishes to speak in allocution, he or she may waive the right to do so. But in the case at bar, no evidence exists that the defendant knew he had a right to personally address the court prior to sentencing. Had the trial court strictly complied with Crim.R. 32(A)(1), the record would affirmatively show that Campbell had indeed known of that right, thereby allowing him to choose whether to exercise it or not. But were we to find waiver in this case, where the record of the sentencing hearing is silent as to the right of allocution, we would in effect be sanctioning a finding of waiver in every case in which the trial court failed to comply with the duty imposed by the rule. We would thereby render Crim.R. 32(A)(1) merely advisory, in direct contradiction to its express language.

*Harmless Error*

{¶ 33} We have recognized that a trial court's failure to address the defendant at sentencing is not prejudicial in every case. In *State v. Reynolds*, *supra*, we found such an omission to be harmless error because the defendant had made an unsworn statement to the jury and sent a letter to the judge, and defense counsel had made a statement to the judge on the defendant's behalf. 80 Ohio St.3d at 684, 687 N.E.2d at 1372.

{¶ 34} Citing *Reynolds*, the state contends that the trial court's noncompliance with Crim.R. 32(A)(1) here is also harmless. The state observes that the trial court had already heard Campbell's confession (in which Campbell had displayed some remorse for killing Dials), Dr. Jeffrey Smalldon's mitigation testimony (in which Smalldon repeated some things Campbell had told him), and the penalty-phase arguments of defense counsel. Moreover, the trial court held a special hearing a week before imposing sentence at which defense counsel argued to the judge for Campbell's life.

8

**{¶ 35}** Here, as in *Reynolds*, defense counsel did speak on Campbell's behalf. Unlike the defendant in *Reynolds*, however, Campbell made no unsworn statement. Thus, the judge never heard Campbell *personally* appeal for his life. His videotaped confession was no substitute for a personal appeal to the judge. When he confessed, Campbell was not speaking to a tribunal about to decide whether he was to live or die.

**{¶ 36}** Nor was Dr. Smalldon's repetition of facts Campbell had told him the equal of Campbell's personal plea. We have no basis for assuming that Campbell would have said the same things to the judge that he said to the doctor. In any case, Campbell's words filtered through Smalldon could never have the same impact as a plea from Campbell himself. Hence, this case is unlike *Reynolds*, and we reject the state's harmless-error claim. Campbell's first proposition of law is sustained.

**{¶ 37}** In a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless the error is invited error or harmless error. Therefore, we remand this cause to the Franklin County Court of Common Pleas with instructions to resentence Campbell on Count Three after directly asking him "if he * * * wishes to make a statement in his * * * own behalf or present any information in mitigation of punishment." Crim.R. 32(A)(1).

**{¶ 38}** We therefore hold that pursuant to Crim.R. 32(A)(1), before imposing sentence, a trial court must address the defendant personally and ask whether he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment, and that Crim.R. 32(A)(1) applies to capital cases as well as noncapital cases. We further hold that in a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), resentencing is required unless the error is invited error or harmless error.

II. Failure to Advise of Right to Unsworn Statement

**{¶ 39}** R.C. 2929.03(D)(1) permits a capital defendant to make a penalty-phase statement without oath or cross-examination. In his second proposition of law, Campbell contends that the trial court had a legal obligation to inform him of that right.

**{¶ 40}** No authority requires a trial court to inform a capital defendant of his right to make an unsworn, penalty-phase statement. Crim.R. 32(A)(1) does not apply, because an unsworn statement under R.C. 2929.03(D)(1) is not an allocution under the rule. See *Reynolds*, 80 Ohio St.3d at 684, 687 N.E.2d at 1372.

**{¶ 41}** Nor do existing legal principles require the adoption of Campbell's novel theory. We have rejected the notion that a trial court must personally address a capital defendant to determine whether he knowingly, intelligently, and voluntarily waived his right to present mitigating evidence. *State v. Keith* (1997), 79 Ohio St.3d 514, 530, 684 N.E.2d 47, 62-63. (Such an inquiry is required when a defendant seeks to waive the presentation of *all* mitigating evidence, *State v. Ashworth* [1999], 85 Ohio St.3d 56, 706 N.E.2d 1231, but Campbell did not do that.) We have also rejected the claim that a trial court must inform the defendant of his right to testify at trial. *State v. Bey* (1999), 85 Ohio St.3d 487, 499, 709 N.E.2d 484, 497. Campbell's claim is not supported by *Keith* or *Bey*. Campbell's second proposition of law is overruled.

III. Preclusion of Mitigating Factors

{¶ 42} In his third proposition of law, Campbell contends that the trial judge precluded him from presenting evidence of two mitigating factors: (1) shortened life expectancy due to physical illness and (2) voluntary intoxication.

*Shortened Life Expectancy*

{¶ 43} On February 13, 1998, Campbell filed a motion in the trial court requesting that he be taken to a medical facility for a "chest CT." ("CT" is an abbreviation for "computed tomography." Stedman's Medical Dictionary [26 Ed.1995] 418.) He attached to his motion a brief medical report dated October 9, 1997, signed by Dr. Jeffrey L. Bory of the Corrections Medical Center, Columbus. Dr. Bory's report stated that X-rays of Campbell's chest showed a "density" in the region of his right lung and "faint nodular densities" in the left, and that "[t]he possibility of a malignant process cannot be excluded." Dr. Bory recommended "[c]omparison to a previous study if it exists"; failing that, he recommended that a chest CT be performed on Campbell "for further evaluation of these findings."

{¶ 44} The trial court held a hearing the same day the motion was filed. Campbell argued that the CT was needed to determine the possible existence of a mitigating factor, *i.e.*, that Campbell was suffering from an illness that might shorten his life. (Although the state contends that this is not a mitigating factor at all, we have recognized that "consideration should be given under R.C. 2929.04[B][7] to the probability that appellant will never be released from prison if sentenced to life in prison." *State v. Bradley* [1989], 42 Ohio St.3d 136, 149, 538 N.E.2d 373, 385.) After hearing argument, the trial court denied the motion. Campbell contends that, by denying him the requested examination, the court precluded him from placing a mitigating factor before the jury.

{¶ 45} Due process may require that a defendant be provided with expert assistance when necessary to present an adequate defense. *State v. Mason* (1998), 82 Ohio St.3d 144, 149, 694 N.E.2d 932, 943, citing *Ake v. Oklahoma* (1985), 470

U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53. However, to show entitlement to such assistance, the defense must make "a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." *Mason*, syllabus. In making this determination, the court must consider "(1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided." *Mason*, 82 Ohio St.3d at 149, 694 N.E.2d at 943.

{¶ 46} Here, Campbell submitted nothing to indicate that the results of a CT would be likely to aid in his defense. Dr. Bory's report showed nothing more than a possibility that the growths on Campbell's lung could be malignant. The mere possibility that the CT could have had some value to the defense was not enough. *Mason*, 82 Ohio St.3d at 150, 694 N.E.2d at 943; *State v. Broom* (1988), 40 Ohio St.3d 277, 283, 533 N.E.2d 682, 691. The defense submission presented the trial court with nothing more than speculation as to the likely value of the CT. This did not amount to the "particularized showing" we spoke of in *Mason*.

{¶ 47} Campbell also failed to show that his physical health was likely to be a critical issue in the penalty phase. The defense apparently hoped to alleviate the jury's possible fears concerning Campbell's future dangerousness by showing that Campbell would likely die in prison. But the jury had the power to *ensure* that Campbell would die in prison, simply by sentencing him to life without possibility of parole. Thus, the argument that Campbell would die in prison was available to the defense even without the CT. A court determining whether to grant a request for expert assistance must consider "the availability of alternative devices that would fulfill the same functions." *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15

OBR 311, 473 N.E.2d 264, paragraph four of the syllabus; *Mason*, *supra*, 82 Ohio St.3d at 150, 694 N.E.2d at 943.

{¶ 48} Moreover, the state did not raise the issue of future dangerousness. Rather, the defense raised lack of future dangerousness as a mitigating factor. Hence, this case does not involve the "requirement that a defendant not be sentenced to death 'on the basis of information which he had no opportunity to deny or explain.' " *Skipper v. South Carolina* (1986), 476 U.S. 1, 5, 106 S.Ct. 1669, 1671, 90 L.Ed.2d 1, 7, fn. 1, quoting *Gardner v. Florida* (1977), 430 U.S. 349, 362, 97 S.Ct. 1197, 1207, 51 L.Ed.2d 393, 404 (plurality opinion).

{¶ 49} Nor did denial of the CT appreciably increase the risk that the jury would err in recommending the penalty. Without the CT, Campbell was still able to present an impressive and substantial case in mitigation. Denial of the CT, therefore, did not deprive Campbell of "the basic and integral tools necessary to ensure a fair trial." *Mason*, 82 Ohio St.3d at 149, 694 N.E.2d at 943.

{¶ 50} Moreover, even though the defense filed its motion a mere eleven days before trial began, this motion was completely silent as to whether a CT would delay the trial. The trial court was not informed regarding the time required to receive a CT report and whether a CT would suffice or whether further testing might be necessary to permit a diagnosis and estimate of life expectancy.

{¶ 51} Applying *Ake* and *Mason*, we conclude that Campbell failed to make the required showing that a reasonable probability existed that the requested chest CT would aid in his defense and that deprivation of the requested assistance would result in an unfair trial. We therefore reject Campbell's claim that he had a constitutional entitlement to have the CT performed.

*Voluntary Intoxication*

{¶ 52} Campbell asked the trial court to instruct the jury in the penalty phase that voluntary intoxication is a potential mitigating factor. See *State v. Sowell*

(1988), 39 Ohio St.3d 322, 325, 530 N.E.2d 1294, 1300. The judge refused because he did not find sufficient evidence of voluntary intoxication to raise a jury issue.

{¶ 53} We disagree with the trial judge's reasoning. There was evidence that Campbell drank forty ounces of beer during the offense. Whether or not he was intoxicated according to any particular definition is beside the point. The fact that he had a substantial amount of alcohol in his system was a circumstance of the offense and was relevant to mitigation under both *Lockett, infra,* and R.C. 2929.04(B).

{¶ 54} However, a trial court is not required to instruct on specific nonstatutory mitigating factors. See, *e.g.*, *State v. Goff* (1998), 82 Ohio St.3d 123, 130-131, 694 N.E.2d 916, 922-923; *State v. Landrum* (1990), 53 Ohio St.3d 107, 122, 559 N.E.2d 710, 727-728. Certainly nothing in the penalty-phase instructions precluded the jury from considering appellant's alcohol consumption. In fact, the trial court instructed the jury to consider, without limitation, "any other factors that are relevant to the issue of whether the offender should be sentenced to death" as mitigating factors. We have held repeatedly that such an instruction is sufficient to allow the jury to consider all the mitigating evidence before it. *Goff, supra; Landrum*, *supra*; *State v. Scott* (1986), 26 Ohio St.3d 92, 102, 26 OBR 79, 87-88, 497 N.E.2d 55, 64. Thus, the trial judge was correct in refusing to instruct specifically on voluntary intoxication, even though "erroneous reasons were assigned as the basis" for that refusal. *Agricultural Ins. Co. v. Constantine* (1944), 144 Ohio St. 275, 284, 29 O.O. 426, 430, 58 N.E.2d 658, 663.

{¶ 55} We reject both claims advanced under Campbell's third proposition of law, which is therefore overruled.

## IV. Sufficiency of Evidence

{¶ 56} Campbell's eighth proposition claims that the state's evidence was legally insufficient to support convictions on Count One.

**{¶ 57}** In reviewing a record for sufficiency, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis *sic*.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2788-2789, 61 L.Ed.2d 560, 573; accord *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503.

**{¶ 58}** Campbell argues that the state failed to prove aggravated murder under R.C. 2903.01(A) as charged in Count One of the indictment. Specifically, Campbell contends that the state failed to prove prior calculation and design.

**{¶ 59}** We conclude that the jury could reasonably find that Campbell killed Charles Dials with prior calculation and design. Two items of evidence in particular lead to this conclusion.

**{¶ 60}** First, Campbell admitted to his interrogators that he "lied to" Dials at the outset of the kidnapping when he told Dials he did not want to hurt him. Thus, the jury could reasonably infer that Campbell had already decided to kill Dials at the very beginning of the crime.

**{¶ 61}** Campbell offers a different interpretation of this statement. He argues that he meant only that "in retrospect, his statement to Dials became a lie after he shot him." Suffice it to say that the jury was free to reject this interpretation.

**{¶ 62}** Second, Campbell told Dials to get down on the floorboard of the truck, then shot him twice at close range in the face and neck. This bespeaks a calculated, execution-style murder. See *State v. Palmer* (1997), 80 Ohio St.3d 543, 570, 687 N.E.2d 685, 707-708.

**{¶ 63}** In two recent cases, the firing of shots into a victim's head at close range was crucial evidence on the basis of which we affirmed jury findings of prior calculation and design. *Palmer*, *supra*; *State v. Goodwin* (1999), 84 Ohio St.3d 331, 344, 703 N.E.2d 1251, 1263. And in *State v. Keenan* (1998), 81 Ohio St.3d 133, 689 N.E.2d 929, after kidnapping his victim and driving around holding him at

knifepoint, the defendant drove him to a remote area and ordered him to "tilt his head back" before cutting his throat. "This sequence of events," we held, "simply is not consistent with a spur-of-the-moment killing." 81 Ohio St.3d at 140, 689 N.E.2d at 939.

{¶ 64} Other factors also support a finding of prior calculation and design. Campbell armed himself with Deputy Harrison's pistol before he commandeered Dials's truck; the likelihood of violence in the kidnapping was commensurately high. He carefully chose the site of the murder: his confession states that he "drove around" the rear of the K-Mart "about three different times" before parking.

{¶ 65} Nor was this the sort of brief, explosive situation in which courts usually find evidence of prior calculation and design to be insufficient. See, *e.g.*, *State v. Reed* (1981), 65 Ohio St.2d 117, 19 O.O.3d 311, 418 N.E.2d 1359; *State v. Mulkey* (1994), 98 Ohio App.3d 773, 649 N.E.2d 897; *State v. Davis* (1982), 8 Ohio App.3d 205, 8 OBR 276, 456 N.E.2d 1256. Dials did not frighten or provoke Campbell. This was no "instantaneous eruption," *State v. Jenkins* (1976), 48 Ohio App.2d 99, 102, 2 O.O.3d 73, 75, 355 N.E.2d 825, 828. The murder of Charles Dials culminated a kidnapping that lasted over two hours. Cf. *Keenan, supra; State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 196, 616 N.E.2d 909, 918.

{¶ 66} We conclude that the record contains evidence sufficient to support the jury's finding of prior calculation and design. We therefore reject Campbell's claim of insufficient evidence.

{¶ 67} Under this proposition of law, Campbell also claims that the jury's verdict of guilty was against the manifest weight of the evidence. See R.C. 2953.02. However, his arguments regarding prior calculation and design are no more persuasive in this context than they were in the context of his insufficiency claim. This simply is not a case where "the jury clearly lost its way" and "the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721.

**{¶ 68}** Campbell's eighth proposition of law is overruled.

V. *Firearm Specification*

**{¶ 69}** In his twenty-third proposition, Campbell contends that the state failed to prove his guilt of the firearm specification to Count Seven (aggravated robbery of Deputy Harrison).

**{¶ 70}** R.C. 2941.145 provides that "[i]mposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

**{¶ 71}** Campbell raises an issue of statutory construction. The theft offense that is the basis of the Count Seven aggravated robbery charge was the theft of Harrison's service pistol. But Harrison's pistol is also the firearm whose possession by Campbell supports his conviction of the R.C. 2941.145 specification. Campbell argues that the firearm specification "never applies when the firearm used for the specification is the object of the theft itself, and when the stolen firearm is the only firearm involved."

**{¶ 72}** Campbell contends that when he stole Harrison's gun, he did not have a firearm on his person or under his control. That is clearly wrong. At the time he took the gun, he was committing a theft, and he obviously had the gun "on or about [his] person or under [his] control."

**{¶ 73}** However, the R.C. 2941.145 specification also requires that the offender must have "displayed" the firearm, "brandished" it, "indicated that [he] possessed" it, "or used it to facilitate the offense." Campbell did not use the gun "to facilitate" the *theft*.

{¶ 74} However, "the offense"—*i.e.*, the aggravated robbery—includes the flight immediately after the theft. Aggravated robbery does not consist solely of *committing* or attempting a theft offense while doing one of the acts listed in R.C. 2911.01(A)(1) through (3); it includes "fleeing immediately after the attempt or offense" while committing one of those acts. R.C. 2911.01(A). Thus, if Campbell did "display," "brandish," "use," or "indicate that [he] possesse[d]" a "deadly weapon" while fleeing immediately after he stole it from Harrison, he was engaged in aggravated robbery during his flight. R.C. 2911.01(A)(1). And if that deadly weapon was also a firearm for purposes of R.C. 2941.145, and Campbell used it "to facilitate the offense"—which includes his flight—then it follows that he was guilty of the firearm specification.

{¶ 75} The jury could infer that Campbell used the gun to commit the carjacking. That means he used it to facilitate his flight immediately after the theft, which in turn means he used it to facilitate the aggravated robbery. Therefore, he was properly convicted of the firearm specification set forth in R.C. 2941.145. His twenty-third proposition is overruled.

VI. Admissibility of Confession

{¶ 76} In his fourth proposition of law, Campbell claims that his confession was involuntary, primarily because police abused him during his arrest. The trial court heard his motion to suppress the confession and denied it; Campbell contends that the denial was erroneous.

{¶ 77} "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances * * *." *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, paragraph two of the syllabus. However, " 'police overreaching' is a prerequisite to a finding of involuntariness. Evidence of use by the interrogators of an inherently coercive tactic (*e.g.*, physical abuse, threats, deprivation of food, medical treatment, or sleep) will trigger the totality-of-the-circumstances analysis." *State v. Clark* (1988), 38

Ohio St.3d 252, 261, 527 N.E.2d 844, 854, quoting *Colorado v. Connelly* (1986), 479 U.S. 157, 163, 107 S.Ct. 515, 520, 93 L.Ed.2d 473, 482.

{¶ 78} The totality of the circumstances includes "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Edwards, supra,* 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, paragraph two of the syllabus.

{¶ 79} In his confession, Campbell told detectives that when he was arrested, a police officer sprayed Mace into his face, even though Campbell was helpless and making no attempt to resist. According to Campbell, the same officer told him, "When you go back to the Workhouse, you're dead." Moreover, Campbell told the detectives, another officer struck him three times in the head as he was being transported to jail, then said, "If I wasn't getting out of this van going back to my car I'd whip your a* * in this van, what could you do about it?"

{¶ 80} During interrogation detectives tried to allay Campbell's fears by pointing out that police brutality is investigated by the internal affairs bureau, that there are cameras in jails, and that officers "can't do the sort of things that was done back 25 years ago." They promised to keep him as safe as they could and pointed out that "it looks bad for us" to have prisoners beaten.

{¶ 81} During the suppression hearing, Campbell introduced no evidence to corroborate his videotaped accusations of police misconduct.

{¶ 82} The trial court made no express finding as to whether Campbell told the truth about being mistreated during his arrest. However, the court did find that *all* of the *Edwards* factors were in the state's favor, specifically including "the existence of physical deprivation or mistreatment." Moreover, the trial court found that Campbell "was more than willing" to confess, and that no pressure was put on him to do so. We think it evident that the trial judge simply did not believe

Campbell's assertions and did not believe any physical deprivation or mistreatment occurred.

{¶ 83} Credibility determinations are made by the trier of fact, as much in a suppression hearing as in the trial itself. *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 58, 437 N.E.2d 583, 584. Nothing in the record provides any basis for overruling the trial judge's credibility determination here. Nothing corroborates Campbell's claim of mistreatment.

{¶ 84} The trial court found that Campbell "was not intoxicated * * *, having only had one 40 oz. beer three hours prior" to the interrogation. This finding was based both on Campbell's statement and on the trial court's viewing of the videotape, which showed "no indication whatsoever" of intoxication.

{¶ 85} Campbell was interviewed at 9:00 p.m., more than five and one-half hours after the latest time he could have consumed any beer. (The empty bottle was left in Dials's truck, which Campbell abandoned sometime between 2:30 and 3:30.) Campbell argues that he may have had more than the single forty-ounce beer mentioned in his confession, because *two* empty bottles were found in the truck. But, in his highly detailed confession, Campbell said that he drank only one bottle; he never mentioned drinking a second, and there is no evidence that he did. (Campbell did say that he *bought* a second bottle of beer after killing Dials, but he said he had no time to drink it. That bottle was later found in Katie Workman's car. It was unopened.) Thus, the record supports the trial court's finding that Campbell was not intoxicated.

{¶ 86} The court further found that Campbell "was aware of his Miranda Rights" and that the interrogation was "moderate" in length and intensity and "friendly" and "congenial" in tone. Moreover, the trial court found that "there were no threats or inducements whatsoever to the Defendant to make his statements."

{¶ 87} The record supports the trial court's findings and compels the conclusion that police used no coercive tactics to obtain Campbell's confession. Campbell's fourth proposition is therefore overruled.

## VII. Prosecutorial Misconduct

{¶ 88} In his ninth proposition, Campbell raises numerous allegations of prosecutorial misconduct.

### Voir Dire

{¶ 89} In voir dire, the prosecutor stated that aggravating circumstances were the kinds of things that might make jurors feel that death was the appropriate penalty. Campbell contends that the prosecutor thereby exposed the jury to nonstatutory aggravating circumstances. But, see, *State v. Tyler* (1990), 50 Ohio St.3d 24, 32, 553 N.E.2d 576, 588. However, Campbell did not object, so the point is waived.

{¶ 90} The prosecutor did err slightly by stating that the aggravating circumstances were "very similar" to the specifications. As Campbell notes, the R.C. 2929.04(A) death specifications set forth in the indictment *are* the aggravating circumstances. However, Campbell did not object to this misstatement at the time. Absent plain error, this issue is also waived.

{¶ 91} We find no plain error. The penalty-phase instructions correctly identified the specific aggravating circumstances that the jury was required to weigh. The prosecutor's misstatement several days earlier in voir dire cannot be said to have clearly determined the outcome of the penalty phase. See *State v. Campbell*, *supra*, 69 Ohio St.3d at 51, 630 N.E.2d at 352.

{¶ 92} In death-qualifying the jury, the prosecutor asked veniremen whether they would be able to impose death in this particular case if the state proved that aggravation outweighed mitigation. We disagree with Campbell's claim that this was error. See *State v. Rogers* (1985), 17 Ohio St.3d 174, 178, 17 OBR 414, 418, 478 N.E.2d 984, 990; *Tyler*, 50 Ohio St.3d at 32, 553 N.E.2d at 588.

*Guilt-Phase Evidence*

**{¶ 93}** Prosecution witness Ken Gangloff was the municipal court cashier to whom Dials paid his fine. In his testimony, Gangloff read Dials's height, weight, and birthdate from Dials's ticket. He quoted Dials as saying that he paid late because he "just now got the money together." He also characterized Dials as "a very well-mannered, nice young man." Appellant contends that this testimony was victim-impact evidence improperly adduced in the guilt phase. See *Tyler*, *supra*, 50 Ohio St.3d at 35-36, 553 N.E.2d at 591.

**{¶ 94}** However, at trial Campbell objected only to Gangloff's statement that Dials was a nice, well-mannered young man. The trial court sustained that objection and told the jury, "It's not relevant." Thus, the error was cured. Campbell did not object to, and hence waived any objection to, Gangloff's other testimony.

*Guilt-Phase Arguments*

**{¶ 95}** Campbell identifies four instances of alleged prosecutorial misconduct in the guilt-phase closing argument. However, he did not object at trial to any of the arguments he complains of now and thus cannot prevail absent plain error. None of the instances of alleged misconduct, either singly or cumulatively, was serious enough to show that the verdict clearly would have been otherwise but for the error.

*Penalty-Phase Cross-Examination*

**{¶ 96}** Campbell contends that the state improperly cross-examined his psychological expert, Dr. Jeffrey Smalldon, by eliciting (over defense objections) facts about the murder of Dials, including crimes against Katie Workman, and about a 1967 conviction resulting from Campbell's shooting a state trooper.

**{¶ 97}** However, Smalldon's direct examination discussed the facts of the Dials murder and the shooting of the trooper. In fact, Smalldon repeated Campbell's claim that he had not shot the trooper. The court therefore properly overruled Campbell's objections to the cross-examination.

**{¶ 98}** Campbell complains that the state diminished the mitigating value of his antisocial personality disorder by eliciting Smalldon's testimony that many people suffer from antisocial personality disorder yet do not commit crimes. However, since the defense had raised the disorder as a mitigating factor, the prosecutor could explore what mitigating value the disorder might have, and his question related to that issue.

**{¶ 99}** Finally, Campbell complains that the state elicited that Campbell was currently ineligible for parole (that is, on his life sentence for the prior murder) until 2085. Campbell argues that this was improper because it suggested that a life sentence would not be any additional punishment in this case. Campbell does not explain why that is improper, however.

*Penalty-Phase Closing Arguments*

**{¶ 100}** The defense introduced evidence of Campbell's good behavior in prison and argued to the jury that it was mitigating. The state countered by arguing that Campbell's main concern was to get out of prison, that Campbell had behaved well because he hoped for parole but could not be counted on to do so if facing a life sentence with little likelihood of parole.

**{¶ 101}** In making this point, the prosecutor reminded the jury that Campbell already had a life sentence with a parole-eligibility date of 2085 (assuming revocation of his current parole). The state argued that since Campbell would have no hope of parole, he was unlikely to adjust well to prison life, regardless of what he had done during his earlier incarceration.

**{¶ 102}** Campbell contends that the state's argument improperly "converted Campbell's good behavior in prison against him." We disagree. This is a dispute about what inferences the jury should draw from the facts adduced at the mitigation hearing. The defense asked the jury to infer that Campbell's previous good prison conduct said something good about his character. The state had an equal right to argue that it did not, but simply represented an effort to win his freedom.

{¶ 103} Campbell waived nearly all of the errors alleged in this proposition of law. Those preserved at trial lack merit. Accordingly, Campbell's ninth proposition is overruled.

VIII. Change of Venue

{¶ 104} In his fifth proposition, Campbell contends that pretrial publicity so pervaded the community that a fair trial was impossible; therefore, the trial court should have ordered a change of venue *sua sponte*. However, Campbell waived this issue by failing to request a change of venue. *State v. Chandler* (1984), 19 Ohio App.3d 109, 112, 19 OBR 197, 200, 483 N.E.2d 192, 196. See, generally, *State v. Williams*, *supra*, 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364.

IX. Ineffective Assistance of Counsel

{¶ 105} In his sixth proposition of law, Campbell contends that his trial counsel rendered ineffective assistance. To prevail, he must show deficient performance, *i.e.*, performance falling below an objective standard of reasonable representation, and prejudice, *i.e.*, a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674, 693, 698. See, also, *Williams v. Taylor* (2000), 529 U.S. 362, ___, 120 S.Ct. 1495, 1511-1512, 146 L.Ed.2d 389, 416; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 106} Campbell contends that his attorneys were deficient in failing to move for change of venue. However, the record before us does not show the pervasive publicity about which Campbell complains. (The appendix to Campbell's brief includes newspaper stories concerning the crime. These are outside the record, and we cannot consider them. See *State v. Phillips* [1995], 74 Ohio St.3d 72, 80, 656 N.E.2d 643, 655, quoting *State v. Ishmail* [1978], 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus.) Hence, on direct appeal, we can evaluate neither the performance of Campbell's attorneys

nor the prejudice that may have resulted from their failure to request a change of venue.

{¶ 107} Campbell accuses his counsel of "disparaging" him by placing "undue emphasis on the aggravated murder" at voir dire and describing it in such terms as "terrible," "horrendous," "gruesome," "senseless." However, it is difficult to discuss this crime without using such words. Even Campbell's present counsel, in their brief, call it "infamous," "sordid," and "horrible." Campbell's counsel may have sought to impress the jury with their candor, hardly an unreasonable tactic.

{¶ 108} The defense strategy throughout was to offer no defense and concentrate on saving Campbell's life. A number of Campbell's complaints about counsel's performance stem from this strategy. Thus, its rationality must be evaluated.

{¶ 109} "Concessions of guilt, in any form, are among the most troublesome actions a defense counsel can [t]ake * * *." *State v. Goodwin* (1999), 84 Ohio St.3d 331, 336, 703 N.E.2d 1251, 1258. Nevertheless, such concessions are not *per se* ineffective but must be analyzed under *Strickland* for deficiency and prejudice. See *Goodwin* at 336-339, 703 N.E.2d at 1258-1260.

{¶ 110} Campbell's guilt was clear. He confessed at length; defense counsel tried to suppress that confession, but failed. Corroborating evidence sealed his guilt. Dials was shot with the same gun Campbell had stolen from Harrison less than three hours before. Campbell's palm print was found in Dials's truck. Campbell told Katie Workman that he had "just killed one man."

{¶ 111} Campbell's counsel stated that he had discussed the trial strategy with Campbell, and that Campbell would have pleaded guilty had the law allowed him to try the penalty phase to a jury after such a plea. Since Campbell had to undergo a jury trial on guilt to get one on penalty, counsel tried "to maintain * * * credibility with this jury" by "let[ting] them know that we're not contesting the

charges." In closing argument, counsel emphasized that Campbell "accepts responsibility for what he did."

**{¶ 112}** However, Campbell contends that his lawyers abandoned available defenses. First, he contends that they should have contested the issue of prior calculation and design. Although counsel did not expressly concede the existence of prior calculation and design, nor did they argue that the state had failed to prove it. (They did ask for an instruction on murder as a lesser included offense, but it was refused.) Campbell contends that had counsel contested prior calculation and design, he might have been acquitted of aggravated murder on Count One.

**{¶ 113}** To the contrary, however, we conclude that it would have been difficult to raise a reasonable doubt as to prior calculation and design. Campbell confessed that he "lied to" Dials when he said he would not hurt him. Moreover, he told Dials to get on the floorboard before shooting him twice in the head at close range.

**{¶ 114}** But even had the suggested strategy had any chance of prevailing as to Count One, it would have done no good at all on the three felony-murder counts, for prior calculation and design was not an element of those counts. Thus, counsel's strategy was rational. Moreover, counsel discussed in advance with Campbell the strategy of not contesting guilt. Even where counsel admits his client's guilt, the client "can hardly complain that his counsel was ineffective if he freely and knowingly consented to the trial strategy." *Wiley v. Sowders* (C.A.6, 1982), 669 F.2d 386, 389.

**{¶ 115}** In addition to showing that his counsel pursued a professionally unreasonable strategy, Campbell must show that the errors of his counsel prejudiced him. That he cannot do. Count One was merged into the felony-murder counts, and thus cannot be a source of prejudice. Prior calculation and design was not an issue as to the felony-murder counts, so the failure to contest it was not prejudicial as to them.

{¶ 116} Campbell also contends that his counsel could have argued voluntary intoxication because Campbell drank a forty-ounce beer before shooting Dials. But voluntary intoxication negates intent only where it renders the defendant unable to form intent. *State v. Fox* (1981), 68 Ohio St.2d 53, 54-55, 22 O.O.3d 259, 260, 428 N.E.2d 410, 411-412; see, also, *State v. Jackson* (1972), 32 Ohio St.2d 203, 206, 61 O.O.2d 433, 434, 291 N.E.2d 432, 433, quoting Wertheimer, The Diminished Capacity Defense to Felony-Murder (1971), 23 Stanford L.Rev. 799, 805. The guilt-phase evidence leaves no room for doubt that this was an intentional killing. Moreover, Campbell never claimed in his confession that he was drunk during the crime, and nothing in the record supports his present claim that he "may have consumed more than one" bottle of beer. The record does not show that counsel either performed deficiently or prejudiced Campbell by failing to pursue a voluntary-intoxication defense.

{¶ 117} Campbell contends that counsel's voir dire statements prejudged his guilt. Yet the statements were consistent with counsel's strategy of conceding guilt and trying to save Campbell's life, and were not prejudicial.

{¶ 118} Campbell also contends that it was ineffective assistance for his counsel to try the R.C. 2929.04(A)(5) specification (prior murder conviction) to the jury instead of the judge.[2] But that too was consistent with counsel's strategy. Since guilt was not contested, jury knowledge of the prior murder could not harm Campbell in the guilt phase.

{¶ 119} Campbell complains that his trial counsel failed to cross-examine several witnesses. But "[t]rial counsel need not cross-examine every witness * * *. The strategic decision not to cross-examine witnesses is firmly committed to

---

2. Under R.C. 2929.022(A), "the defendant may elect to have * * * the trial judge, if he is tried by jury, determine the existence of [the] aggravating circumstance [of (A)(5)] at the sentencing hearing."

trial counsel's judgment * * *." *State v. Otte* (1996), 74 Ohio St.3d 555, 565, 660 N.E.2d 711, 721.

{¶ 120} In particular, Campbell complains that his counsel did not cross-examine Dr. Fardal, the coroner, on his "inconsistent" testimony that Dials died of two gunshot wounds even though one of the wounds "by itself would not be considered a fatal wound." But Fardal's testimony was not inconsistent: he attributed Dials's death to both gunshot wounds but noted that one of them (though "a potential fatal injury") would not have been *immediately* fatal by itself, while the other one would have been. Nor does Campbell explain how exploring this "inconsistent" testimony would have helped his case. Since Campbell fired both shots, it made no difference which one was fatal.

{¶ 121} Campbell contends that his counsel were ineffective because they failed to object to alleged prosecutorial misconduct and instructional errors. However, in one instance counsel did object. As for the others, no valid objections were available under existing law.

{¶ 122} Campbell contends that his counsel should have objected to the prosecutor's argument. However, a reasonable attorney may decide not to interrupt his opponent's closing argument. See *State v. Keene* (1998), 81 Ohio St.3d 646, 668, 693 N.E.2d 246, 264.

{¶ 123} Campbell contends that his counsel should not have discussed penalty in their guilt-phase closing argument. Although punishment is not the issue in the guilt phase, the argument was not an error by counsel but part of a consciously adopted, rational strategy to concentrate on saving Campbell's life.

{¶ 124} Campbell contends that counsel pursued a counterproductive penalty-phase strategy. He cites their introduction of Defense Exhibit B, a videotape showing the precautions the Franklin County Jail was taking to prevent another escape. According to Campbell, the video raised the issue of future dangerousness. However, given the facts, counsel could reasonably fear that future

dangerousness would be on the jurors' minds no matter what. Hence, it was logical to try to allay that concern by showing that precautions can be taken to prevent Campbell from making another escape.

{¶ 125} Next, he argues that the defense should not have introduced Campbell's prison records. However, Dr. Smalldon consulted and relied upon those records in diagnosing Campbell. Campbell does not contend that the defense should have dispensed with Smalldon's testimony, which was critical to the case for life, just to keep his prison records out of the trial.

{¶ 126} Next, he argues that no rational attorney would attempt to present good behavior in prison as a mitigating factor in a case like this, where the murder was committed after the defendant's escape from jail. We disagree. Reasonable attorneys could easily conclude that no legitimate mitigating factor should be withheld from the jury.

{¶ 127} Next, he argues that counsel's attempt to shift blame to Deputy Harrison alienated the jury. This speculative argument does not establish prejudice.

{¶ 128} Next, he claims that defense counsel failed to prepare Dr. Smalldon adequately as a witness. Smalldon admitted that he diagnosed Campbell's personality disorder before he had reviewed all pertinent records. But it is not clear that this was counsel's fault. Smalldon was the expert psychologist, and he, not counsel, was qualified to decide when he had adequate information to make a diagnosis.

{¶ 129} Next, Campbell claims that the record does not show that counsel advised him to make an unsworn statement. But neither does it show that they failed to. It is Campbell's burden to "show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Moreover, we cannot say that it is always best for a defendant to make an unsworn statement, and Campbell fails to explain why his counsel should have advised him to do so here.

{¶ 130} Finally, Campbell complains that his counsel failed to correct the trial court's misapprehension that Campbell had no right to allocution on the capital counts. Our disposition of his first proposition of law negates any prejudice from this error.

{¶ 131} Campbell's sixth proposition of law is overruled.

X. Guilt-Phase Instructions

{¶ 132} In his sixteenth proposition, Campbell asserts that the trial court erred by refusing to instruct on murder as a lesser included offense of Count One, aggravated murder with prior calculation and design.

{¶ 133} R.C. 2903.02, murder, is a lesser included offense of R.C. 2903.01(A), aggravated murder with prior calculation and design. *State v. Spirko* (1991), 59 Ohio St.3d 1, 33, 570 N.E.2d 229, 263. But a court must charge on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. Given that there is sufficient evidence to prove that Campbell killed Dials with prior calculation and design, it was not error to deny a jury instruction on the lesser included offense of murder. Campbell's sixteenth proposition, therefore, is overruled.

{¶ 134} In his tenth proposition of law, Campbell contends that the trial court's instruction on aggravated murder was circular because the instruction defined prior calculation and design in terms of purpose. Campbell contends that, in effect, this instruction told the jury to convict him of aggravated murder if it found that he killed purposefully.

{¶ 135} Campbell's argument is incorrect. The instruction cannot be reasonably understood as equating prior calculation and design with purpose. The instructions made it clear that "prior calculation and design" is more than simply purpose, with language such as this:

"A person acts with prior calculation and design when by engaging in a *definite process of reasoning* he forms a purpose to kill *and plans the method he intends to use to cause death*.

"The circumstances surrounding the homicide must show *a scheme designed* to carry out the *calculated decision* to cause the death. No definite period of time must elapse and no particular amount of consideration need be given, but *acting on the spur of the moment* or after *momentary consideration* of the purpose to cause death *is not sufficient*." (Emphasis added.)

{¶ 136} These instructions make clear to any reasonable juror that purpose to kill is not the same thing as prior calculation and design and does not by itself satisfy the *mens rea* element of R.C. 2903.01(A). Therefore, Campbell's tenth proposition is overruled.

{¶ 137} In the guilt phase, the trial court instructed the jury: "You may not discuss or consider the subject of punishment. Your duty is confined to the determination of the *guilt or innocence* of the Defendant." (Emphasis added.) In his fifteenth proposition, Campbell contends that this instruction asked the jury to determine whether Campbell was *innocent*, when it should have been considering only whether the state had proved him *guilty*. According to Campbell, this shifted the burden of proof from the state to him. However, Campbell did not object at trial. This waived the alleged error. See, generally, *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph one of the syllabus.

{¶ 138} No plain error exists here. An instruction "must be viewed in the context of the overall charge." *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus.

{¶ 139} The trial court instructed that Campbell was "*presumed innocent unless and until his guilt is established* beyond a reasonable doubt," and "*must be acquitted * * * unless the State produces evidence which convinces you* beyond a reasonable doubt of every essential element of the offense." (Emphasis added.)

Further, the trial court instructed the jury, as to each individual offense and each specification, to convict if it found that "the State of Ohio has proved beyond a reasonable doubt all of the elements of the offense," and to acquit if it found that "the State of Ohio has failed to prove beyond a reasonable doubt any of the elements of the offense." In explaining the verdict forms, too, the trial court repeatedly told the jury that it must find that the state had proved Campbell's guilt in order to convict and must return a verdict of not guilty if the state failed to prove any element.

{¶ 140} The jury must be presumed to have followed these instructions. Hence, Campbell cannot show that the jury's verdict clearly would have been different but for the alleged error. As a result, plain error does not exist. *Long*, *supra*, at paragraph three of the syllabus. Campbell's fifteenth proposition is therefore overruled.

{¶ 141} The trial court instructed that purpose to kill "may be inferred from the use of" a deadly weapon. In his seventeenth proposition, Campbell contends that former R.C. 2903.01(D) required the trial court to tell the jury specifically that this inference was nonconclusive. That statute provided:

"If a jury in an aggravated murder case is instructed that a person who commits or attempts to commit *any offense listed in division (B) of this section* may be inferred, * * * because *the offense and the manner of its commission would be likely to produce death* * * *, to have intended to cause the death of any person who is killed * * * during the commission of, attempt to commit, or flight from the commission of or attempt to commit the offense, the jury also shall be instructed that the inference is nonconclusive * * *." (Emphasis added.) Am.Sub.S.B. No. 239, 146 Ohio Laws, Part VI, 10425.

{¶ 142} Former R.C. 2903.01(D) does not apply, since the trial court never instructed that the jury could infer purpose to kill from the commission of an

underlying felony in a manner likely to produce death. See *State v. Phillips* (1995), 74 Ohio St.3d 72, 100, 656 N.E.2d 643, 668.

{¶ 143} Moreover, Campbell never requested such an instruction or called the alleged error to the trial court's attention. Hence, any error is waived. Finding no plain error, we therefore overrule Campbell's seventeenth proposition of law.

XI. Penalty-Phase Instructions

{¶ 144} In its penalty-phase instructions, the trial court listed the nature and circumstances of the offense among the mitigating factors that the jury could consider. In his twentieth proposition, Campbell contends that the instruction was erroneous because he had not claimed that the nature and circumstances of the offense were mitigating factors in this case. According to Campbell, *Lockett v. Ohio* (1978), 438 U.S. 586, 604-605, 98 S.Ct. 2954, 2964-2965, 57 L.Ed.2d 973, 990, forbids the sentencer to consider any mitigating factor other than those the defendant chooses to proffer.

{¶ 145} Campbell did not object to the instruction. Hence, he has waived this issue. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. This proposition of law must therefore be overruled.

{¶ 146} In his eighteenth proposition, Campbell argues that the trial court denied him due process and violated the Eighth Amendment by instructing the jury to consider in the penalty phase "any evidence relevant to the aggravating circumstance raised at trial."

{¶ 147} Although we have recognized that R.C. 2929.03(D)(1) permits reintroduction of much or all of the guilt-phase evidence, *State v. Woodard* (1993), 68 Ohio St.3d 70, 78, 623 N.E.2d 75, 81, we have also recognized that some guilt-phase evidence should be excluded as irrelevant to the penalty determination. *State v. Getsy* (1998), 84 Ohio St.3d 180, 201, 702 N.E.2d 866, 887. Thus, a trial court's admission of all guilt-phase evidence *en bloc* is error, for "it is the trial court's responsibility, during the penalty phase, to identify and admit only the evidence

relevant to that phase." *State v. Lindsey* (2000), 87 Ohio St.3d 479, 485, 721 N.E.2d 995, 1003.

{¶ 148} However, during the penalty phase, Campbell specifically objected only to the photos of the truck with Dials's body in it. Thus, he waived any objection to the readmission of other guilt-phase evidence.

{¶ 149} We find that the photos were relevant to the felony-murder aggravating circumstances. Therefore, "[w]hile the trial court should have exercised its responsibility to determine the relevance of the evidence admitted, the evidence contested was neither irrelevant nor prejudicial to the penalty phase." *Id.* Campbell's eighteenth proposition is overruled.

XII. Sentencing Opinion

{¶ 150} In his nineteenth proposition, Campbell contends that his death sentence should be reversed because of flaws in the trial court's sentencing opinion.

{¶ 151} The trial court noted that Campbell's siblings, who survived the same abusive environment he did, grew up to be law-abiding citizens. Also, the court noted that many people who, like Campbell, have an antisocial personality disorder do not become criminals and can function in society. Campbell argues that such comparisons are improper. We disagree. See *State v. White* (1999), 85 Ohio St.3d 433, 450, 709 N.E.2d 140, 157; *State v. Waddy* (1992), 63 Ohio St.3d 424, 452, 588 N.E.2d 819, 839.

{¶ 152} The trial court stated that Campbell "has now taken the life of a second individual in cold blood, and this Court shall not give the Defendant the opportunity to take a third." Campbell claims that this improperly gave aggravating weight to future dangerousness, which is not a statutory aggravating circumstance and therefore cannot be weighed against a defendant. We think he misreads the sentencing opinion. The trial court's statement referred to Campbell's prior murder conviction. That conviction is a *statutory* aggravating circumstance, and one that the state pleaded and proved in this case. Moreover, Campbell's mitigation case

rested largely on the likelihood of his making a good adjustment to prison life, and the court's statement was also relevant as the negation of that mitigating factor.

{¶ 153} The trial court noted that Campbell "could offer no justification for shooting Charles Dials." Campbell points out that mitigating circumstances do not concern culpability or legal justification; indeed, an act committed with legal justification is not a crime. However, the sentencing opinion as a whole does not give the impression that the court believed Campbell's proffered mitigation deserved weight only if it constituted a legal justification for killing Dials. Cf. *Eddings v. Oklahoma* (1982), 455 U.S. 104, 112-113, 102 S.Ct. 869, 876, 71 L.Ed.2d 1, 9-10. To the contrary, the opinion carefully considered Campbell's proffered mitigation.

{¶ 154} The trial court did err in using the word "justification." For clarity's sake, trial courts should avoid the word "justify" and its derivatives when discussing mitigating evidence in capital sentencing opinions. However, our independent reweighing of aggravation and mitigation can cure this verbal error.

{¶ 155} In considering Campbell's claim that alcohol was a factor in the murder, the trial court stated that Campbell "only consumed one forty-ounce (40 oz.) bottle of beer over several hours." Campbell interprets this as a finding that he "slowly sipped a single beer over a matter of hours" and contends that there is no evidence to this effect.

{¶ 156} However, the trial court did not say Campbell "slowly sipped" the beer. Moreover, what the court did say has support in the record. Campbell said that, after buying the beer, he sat in the K-Mart parking lot "a good 2 hours" before killing Dials.

{¶ 157} Campbell contends that the trial court considered nonstatutory aggravating circumstances: the assault on Deputy Harrison, the deliberate faking of paralysis, and the "cold-blooded, senseless" nature of Dials's murder.

**{¶ 158}** The assault on Harrison was part of Campbell's escape, which was charged as an aggravating circumstance. R.C. 2929.04(A)(3). However, the trial court chose to merge the (A)(3) specification into the two felony-murder specifications. Campbell contends that the assault on Harrison and faking of paralysis thus became irrelevant. However, both facts remained relevant, because they tended to refute the defense contention that Campbell was capable of making a good adjustment to prison.

**{¶ 159}** As for the "cold-blooded, senseless" nature of the murder, the murder is part of the felony-murder aggravating circumstance. Hence, the nature of the murder goes to the nature and circumstances of the (A)(7) aggravating circumstance.

**{¶ 160}** Campbell contends that the trial court "improperly converted evidence of Campbell's good prison behavior against him." We disagree. The judge was explaining why he did not find that behavior impressive as a mitigating factor.

**{¶ 161}** Campbell's nineteenth proposition is overruled.

XIII. Gruesome Photographs

**{¶ 162}** In his fourteenth proposition, Campbell contends that the state improperly introduced gruesome photographs at trial. In capital cases, such photographs are inadmissible unless their probative value outweighs the danger of unfair prejudice, or the photographs are repetitive or cumulative. See, *e.g.*, *State v. Morales* (1987), 32 Ohio St.3d 252, 258, 513 N.E.2d 267, 274. However, whether to admit photographs alleged to be gruesome is within the trial court's discretion; hence, we will not reverse the trial court's decision unless it amounts to an abuse of that discretion. *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 15 OBR 379, 401, 473 N.E.2d 768, 791.

**{¶ 163}** Campbell cites six photos as improper: State's Exhibits 17A, 17C, and 17D (crime scene) and 25A, 25B, and 25C (autopsy). Exhibit 17A, taken from

the driver's side of the truck, shows Dials's body. His back is to the camera. The photo shows no wounds and little blood. It is not gruesome. Nor is 17D, which shows a few droplets of blood on the truck window. Exhibit 17C is somewhat gruesome, but not cumulative. It shows Dials's body from the passenger side; a large amount of blood is visible, but no wounds can be seen. Exhibit 17C also shows a coat draped over part of Dials's body, which corroborates the confession and is not clearly shown in 17A.

{¶ 164} Exhibit 25A is gruesome, but it is the only one showing the entrance wound in Dials's neck. Both 25B and 25C show the wound below Dials's right eye. Exhibit 25B shows Dials's face as it came to the morgue, covered with blood. It is gruesome, but gives the clearest idea of the severity of the wound, and it is the only photo of Dials's face with blood on it. Exhibit 25C shows Dials's face after the blood was washed off; unlike 25B, it clearly depicts the stippling near the wound that indicates a shot fired at close range. Exhibits 25B and 25C were not cumulative or repetitive: each shows something the other does not.

{¶ 165} Campbell contends that his offer to stipulate to the victim's identity and cause of death stripped the photographs of probative value. He is wrong. *Maurer*, *supra*, 15 Ohio St.3d at 265, 15 OBR at 401-402, 473 N.E.2d at 792.

{¶ 166} The trial court did not abuse its discretion in admitting the photos at issue here. Each photo had sufficient probative value to outweigh its prejudicial effect, and they were not repetitive or cumulative. Therefore, we overrule Campbell's fourteenth proposition.

XIV. Proceedings in Defendant's Absence

{¶ 167} In his twelfth proposition, Campbell asserts that his due process right to be present at all critical stages of trial was violated when the trial court answered a question from the jury in Campbell's absence.

{¶ 168} A note from the jury asked for clarification of a term in Count Seven, aggravated robbery. The judge discussed the question with counsel for both

parties, determined the answer, and answered the question by return note. Campbell's attorney consented to this being done without Campbell returning to court.

{¶ 169} A defendant has a Fourteenth Amendment due process right to be present at every critical stage of his trial. *Snyder v. Massachusetts* (1934), 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674. The question is whether "his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Id*. at 105-106, 54 S.Ct. at 332, 78 L.Ed. at 678.

{¶ 170} Campbell had no right to be present at the legal discussion of how the question should be answered. *United States v. Moore* (C.A.7, 1991), 936 F.2d 1508, 1523. Nor did he have a right to be present when the judge sent the note to the jury room. Although the oral delivery of jury instructions in open court is a critical stage of trial, see *Wade v. United States* (C.A.D.C.1971), 441 F.2d 1046, the trial court here did not instruct the jury in open court; instead, he sent a note. A defendant benefits from his presence, and may be harmed by his absence, when instructions are given in open court. See *id.* at 1050. But these potential benefits and harms do not exist when the judge merely sends a note to the jury room. We therefore hold that the sending of the note was not a critical stage of the trial. Campbell's twelfth proposition is overruled.

## XV. Vagueness Challenge

{¶ 171} In his eleventh proposition, Campbell argues that the term "serious physical harm," as defined by R.C. 2901.01(A)(5)(a), is unconstitutionally vague, because it includes "any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." The guilt-phase instruction defining "serious physical harm" included this allegedly vague definition. Since the jury was instructed that serious physical harm is an element of kidnapping, aggravated robbery, and felonious assault, Campbell contends that his convictions must be reversed as to all felonious assault, kidnapping, and

aggravated robbery counts, and all felony-murder counts and specifications based on aggravated robbery and kidnapping.

{¶ 172} However, Campbell did not challenge the alleged vagueness and overbreadth of the statute at trial. Hence, the issue was waived. Campbell's eleventh proposition is overruled.

## XVI. Settled Issues

{¶ 173} In his thirteenth proposition, Campbell contends that double jeopardy principles preclude punishing him for both felony-murder and the underlying kidnapping, where the state relies upon the victim's murder to satisfy the "serious physical harm" element of kidnapping. However, it is well established that "felony-murder under R.C. 2903.01(B) is not an allied offense of similar import to the underlying felony. * * * That being the case, R.C. 2941.25 authorizes punishment for both crimes, and no double jeopardy violation occurs." *State v. Keene* (1998), 81 Ohio St.3d 646, 668, 693 N.E.2d 246, 265; see, also, *State v. Logan* (1979), 60 Ohio St.2d 126, 135, 14 O.O.3d 373, 379, 397 N.E.2d 1345, 1352.

{¶ 174} We summarily overrule Campbell's twenty-first proposition of law on authority of *State v. Van Gundy* (1992), 64 Ohio St.3d 230, 594 N.E.2d 604.

{¶ 175} Campbell's twenty-second proposition consists of well-worn challenges to the constitutionality of the death penalty. Campbell waived these claims by failing to raise them at trial. See *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus.

## XVII. Independent Sentence Review

{¶ 176} In his seventh proposition of law, Campbell contends that the aggravating circumstances present in this case do not outweigh the mitigating factors beyond a reasonable doubt and that death is thus not the appropriate sentence. However, because we are remanding this cause to the trial court for further consideration of the death sentence, it is premature for us to independently review the appropriateness of that sentence at this time.

Conclusion

**{¶ 177}** We overrule Campbell's second through twenty-third propositions of law (except his seventh) and affirm his convictions.  However, we sustain Campbell's first proposition of law.  Accordingly, we vacate the sentence of death and remand this cause to the Franklin County Court of Common Pleas for further sentencing proceedings consistent with this opinion.

*Judgment accordingly*.

F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and RESNICK, JJ., concur in part and dissent in part.

_____

**ALICE ROBIE RESNICK, J., concurring in part and dissenting in part.**

{¶ 178} I concur in the affirmance of the conviction, but I disagree with the majority's conclusion that this case must be remanded for resentencing, and would affirm Campbell's death sentence. Once again, as in *State v. Green* (2000), 90 Ohio St.3d 352, 738 N.E.2d 1208, a majority of this court applies an overly mechanistic interpretation of Crim.R. 32(A)(1) to a specific set of facts to reach the unwarranted conclusion that a defendant's right of allocution was sufficiently violated to taint the sentencing.

{¶ 179} As in *Green*, I have little disagreement with the general statements made by the majority about the right of allocution. However, when the proceedings below are examined for compliance with the specifics of that right, reversal is unwarranted.

{¶ 180} The tenor of the majority opinion appears to acquiesce in Campbell's view, set forth in his appellate brief, that his trial counsel played a role in causing the trial judge to erroneously conclude that the allocution right applied only to sentencing on the noncapital counts, and not to sentencing on the capital counts.

{¶ 181} Campbell's brief states that "[o]n March 27, 1998, the trial court heard arguments on the mitigating factors. After hearing the arguments of defense counsel on the mitigating factors, the trial court set the date for sentencing. The prosecutor then correctly noted that Campbell was entitled to allocution before sentencing. Defense counsel improperly stated, however, that Campbell was entitled to allocution on the noncapital counts only. The trial court agreed with defense counsel."

{¶ 182} At the sentencing on April 3, 1998, the trial court first allowed the state to select which capital count Campbell would be sentenced on. The state selected Count Three, so the trial court then merged the other capital counts into Count Three. The trial court then proceeded directly to deliver its sentencing

opinion in its entirety, accepting the recommendation of the jury and sentencing Campbell to death. After dealing with matters related to Campbell's appeal, the trial court entertained several victim-impact statements, and then, before sentencing on the noncapital counts, asked both of Campbell's attorneys whether they had anything to say. After a short reply, the trial court explicitly said, "Mr. Campbell, do you have anything you want to say to the Court?' Campbell responded, "No, I don't, your Honor." At that point, the trial court proceeded to sentence Campbell on the noncapital counts.

{¶ 183} I believe that the concepts of invited error, waiver, and harmless error and lack of prejudice all apply to the circumstances here.

Invited Error

{¶ 184} The majority determines that invited error is not present because defense counsel did not "induce" the error, was not "actively responsible" for it, and "at worst" acquiesced in it. I disagree. It is necessary for a complete understanding of the proceedings involved to set out in full the relevant discourse between the trial court, the prosecutors, and Campbell's attorneys at the March 27, 1998 hearing, beginning at the point in the hearing where the parties had concluded their additional arguments on whether death was the appropriate sentence:

"THE COURT: Thank you very much. I'll render my decision a week from today.

"MR. STEAD [assistant prosecutor]: What time was that on the 3rd?

"THE COURT: Let's say 10 o'clock.

"MR. O'BRIEN [prosecutor]: Thank you, your Honor.

"MR. LUTHER [defense counsel]: Your Honor, at that time there will be no discussion by counsel. The Court will just come out and render the—

"THE COURT: Right. I'll come out and render my decision and then I assume, once I've rendered my decision on counts One, Two, Three, and Four, then

there will be a sentencing where you will be able to make statements and, of course, the—I assume the—at that point I can take statements on the—

"MR. LUTHER:  On victim impact.

"THE COURT:  Mr. Stead, you are looking kind of—

"MR. STEAD:  I'm listening to—

"MR. O'BRIEN:  I'm just saying that would the Defendant have an allocution right before the Court announces its sentencing decision on the 3rd[?]

"THE COURT:  Yeah.

"MR. LUTHER:  Yeah.  After you've made your decision on Counts One through Four, then I think we have a right to make a statement in allocution as to the sentences on the other offenses.

"THE COURT:  Right.

"MR. O'BRIEN:  And we would have victim impact statements on the other sentences too.

"THE COURT:  That's what I was just saying.  After I render, on One through Four, then on the second, Counts Five through Fourteen, at that point I will take statements and there will be a separate sentencing process that would go along afterwards.

"MR. LUTHER:  Then you will go ahead and impose the sentence on the case.

"THE COURT:  And I'll impose the sentence on the other charges also.  Okay.  Does that sound all right with everyone?"

{¶ 185} I believe that defense counsel's statement "After you've made your decision on Counts One through Four, then I think we have a right to make a statement in allocution as to the sentences on the other offenses" could plausibly be viewed as an affirmative statement that Campbell did not wish to exercise his right to allocution prior to sentencing on the capital count.  It is not clear that Campbell's trial counsel was proceeding under the erroneous impression that Crim.R. 32(A)(1)

does not apply to capital cases, and I disagree with the majority's ready acceptance of the view of Campbell's present attorneys on appeal regarding the statement made by trial counsel. Since the phrasing of Crim.R. 32(A) does not distinguish between capital cases and noncapital cases, it seems beyond question that the rule on its face must apply to *all* criminal cases, and I do not believe that defendant's trial counsel was indicating anything otherwise with his statement.

**{¶ 186}** Instead, I read defense counsel's statement as subject to an interpretation that his client did not wish to make a statement prior to sentencing on the capital offenses, but perhaps would wish to make a statement prior to sentencing on the noncapital offenses. To the extent that there might be some error in the trial court's failure to address Campbell personally on his right of allocution prior to sentencing on Count Three, I would find that the error was invited by Campbell's trial counsel.

Waiver

**{¶ 187}** Consistent with my view that Campbell invited any error that may have occurred, I also believe that Campbell's failure to object in these specific circumstances waived any claims of error he may have. See *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus. Imposing an obligation on the trial court to address the defendant personally in *every* circumstance prior to sentencing, even when the defendant has already expressed a desire not to speak, unnecessarily extends the requirements of Crim.R. 32(A)(1). That is especially true in this situation, where the trial court made sure to address the defendant personally before sentencing on the noncapital counts, and Campbell declined to speak. In *State v. Reynolds* (1998), 80 Ohio St.3d 670, 687 N.E.2d 1358, this court in essence adopted a substantial-compliance approach to this aspect of Crim.R. 32(A)(1). Although the majority states that this court has "recognized that a trial court's failure to address the defendant at

sentencing is not prejudicial in every case," the majority in this case seems to adopt an absolutist interpretation of the rule that is actually at odds with *Reynolds*.

Harmless Error/Lack of Prejudice

**{¶ 188}** The majority's conclusion that this case is distinguishable from *Reynolds* is unconvincing. In *Reynolds*, 80 Ohio St.3d at 684, 687 N.E.2d at 1372, this court focused on several factors to find that the defendant was not prejudiced, stating, "A court's error in failing to ask a defendant if he wants to make a statement prior to sentencing is not prejudicial where, as here, the defendant makes an unsworn statement in the penalty phase, sends a letter to the trial court, and where defense counsel makes a statement on behalf of the defendant."

**{¶ 189}** Obviously, the list of factors in *Reynolds* is not an exhaustive one, and that case illustrates that prejudice on this issue must be determined on a case-by-case basis. One of the *Reynolds* factors is present in this case, and appears to be even stronger than in *Reynolds*, in that defense counsel spoke extensively on Campbell's behalf, both in penalty-phase arguments and at the March 27, 1998 hearing, and were also offered an opportunity to speak at the April 3, 1998 sentencing.

**{¶ 190}** The letter to the judge that the defendant sent in *Reynolds* is a factor not present in this case, but I believe that two other factors more than make up for that one—that Dr. Jeffrey Smalldon's mitigation testimony repeated statements Campbell had made to him, and that Campbell was given an opportunity to make a statement before being sentenced on the noncapital offenses. On balance, I see this case as quite comparable to *Reynolds*, with roughly the same degree of prejudice, if not less. I would apply the precedent established in *Reynolds* to this case and find harmless error in these circumstances.

**{¶ 191}** Additionally, had Campbell exercised his allocution right at the time he was addressed personally prior to sentencing on the noncapital counts, he would potentially have been commenting on Count Three as well. All of the

SUPREME COURT OF OHIO

noncapital counts at trial arose from the same series of events that gave rise to Count Three. Anything Campbell could have said would have applied to all of the charges against him, and he could have made "a statement in his * * * own behalf" at that time. See Crim.R. 32(A)(1).

**{¶ 192}** Finally, had Campbell made such a statement at that time, nothing would have prevented the trial judge from relying on the statement to reconsider his earlier sentencing decision on Count Three, since the sentence on Count Three was subject to modification until it was journalized.

**{¶ 193}** In *Reynolds*, 80 Ohio St.3d at 684, 687 N.E.2d at 1372-1373, this court remarked that "[f]ailure to provide a defendant the right of allocution could constitute reversible error in a future case." I do not disagree with the general import of that statement; however, based on the record before us, this case is not the appropriate future case to fulfill the terms of the *Reynolds* remark. Since the majority finds reversible error where it should not be found, I dissent.

DOUGLAS, J., concurs in the foregoing opinion.

—————————