[Cite as *State v. Gutierrez*, 2021-Ohio-4232.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No.  WD-21-035

        Appellee                                Trial Court No.  2020CR0453

v.

Daniel Lee Gutierrez                             **DECISION AND JUDGMENT**

        Appellant                               Decided:  December 3, 2021

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.     Introduction

{¶ 1}  Appellant, Daniel Gutierrez, appeals the judgment of the Wood County

Court of Common Pleas, sentencing him to 18 months in prison after he pled guilty to

one count of domestic violence.  Finding no error in the proceedings below, we affirm.

## II.    Facts and Procedural Background

**{¶ 2}** On December 3, 2020, appellant was indicted on one count of domestic violence in violation of R.C. 2919.25(A) and (D)(4), a felony of the third degree, and one count of unlawful restraint in violation of R.C. 2905.03(A) and (C), a misdemeanor of the third degree. These charges arose out of an incident that occurred at the Best Motel in Bowling Green, Wood County, Ohio, on October 10, 2020. During the incident, appellant pushed his live-in girlfriend, S.C., to the floor, then proceeded to punch her twice in the chest and kick her while she was on the floor. Appellant then pushed his knee onto S.C.'s upper chest and pinned her to the floor for several minutes, causing S.C. to have difficulty breathing.

**{¶ 3}** Appellant initially entered a plea of not guilty to the aforementioned charges at his arraignment on December 11, 2020. Following successful plea negotiations, on March 16, 2021, appellant appeared before the trial court for a plea hearing. The parties informed the trial court of a plea agreement under which the state agreed to dismiss the charge of unlawful restraint and amend the domestic violence charge to a felony of the fourth degree in exchange for appellant's plea of guilty to the amended domestic violence charge. Following a Crim.R. 11 colloquy, and upon the state's recitation of the facts underpinning the domestic violence charge, the trial court accepted appellant's guilty plea and continued the matter for sentencing.

2.

{¶ 4} Appellant appeared before the trial court for sentencing on April 27, 2021. Because appellant's sole assignment of error in this appeal pertains to what occurred at sentencing, a thorough articulation of the events that transpired at the sentencing hearing is appropriate.

{¶ 5} The trial court began the hearing by noting its consideration of the presentence investigation report that was prepared prior to sentencing. Thereafter, appellant's defense counsel spoke on appellant's behalf. At the outset of counsel's statement in mitigation, counsel for appellant acknowledged that appellant's prior criminal record included 15 traffic offenses, 19 misdemeanors, and two felonies, including a prior domestic violence conviction from 2011. Nonetheless, counsel stated that appellant has "reconnected with his family. His mother is present in court with him today. He had initially moved here to [Bowling Green] to start over with the victim in this case and then Covid occurred. * * * And things declined quickly with the two of them residing at some point in time in the hotel where this incident occurred." Counsel further explained that appellant was current on his child support and was visiting with his two minor children on a regular basis. Finally, counsel informed the court that appellant was employed full-time and was not abusing any illegal substances.

{¶ 6} In response, the state emphasized appellant's criminal history and pointed out the fact that appellant was previously convicted of "violent acts that go back years and years and years, all the way back to 2008, violating a temporary protection order,

3.

domestic violence, in [2009], et cetera." Based upon this criminal history, the state asked the trial court to impose a prison sentence of at least 15 months.

{¶ 7} Subsequent to the state's sentencing request, the trial court asked appellant if he wished to speak, at which time he stated:

> I mean, the victim – I would say I'm sorry. I wish that night didn't happen.
> I'm just now trying to move forward. Hopefully she's going forward, too.
> I'm just trying to get on with my life. I've got a job, which is hard to come
> by. You've seen my background and history. I'm just trying to do right.

After appellant made the foregoing statement, the trial court questioned him as to any concrete steps he had taken to address his mental health issues. Appellant informed the trial court that he had scheduled a mental health assessment, and the court asked appellant, "What's going on in your life right now?" Appellant responded that he was working and saving money in an attempt to move out of his mother's home and was also seeing his children regularly.

{¶ 8} Following appellant's statement that he was living with his mother, the state interjected without the court's prompting and the following colloquy took place:

> [PROSECUTOR]: Your Honor, the State would ask the Court if the
> defendant could clarify that he lives at his mom's. If so, the State has
> people waiting in the hallway that will be willing to give testimony that he
> is not at his mom's and in fact that it looks like there's going to be new

4.

charges brought against him for beating her up again last night in Bryan, Your Honor.

THE COURT: Wait. Let's be clear. Are you saying the victim?

[PROSECUTOR]: Yes, I have witnesses.

THE COURT: Are we saying the victim?

[PROSECUTOR]: Yes. I have witnesses in the hallway that were at the hotel in Bryan that indicate that's where he was staying. The victim's brother actually was in that hotel. I have seen text messages, et cetera. So I think his story is a little bit off the mark, Your Honor.

THE COURT: I am not going to require him to say anything at this point about that because he could incriminate himself. I'm not going to do that. I'm going to focus the attention here.

{¶ 9} Without objection from appellant's defense counsel, and without giving appellant an opportunity to respond to the state's domestic violence allegation, the trial court turned to sentencing. The court stated that it was "going to be very careful, very clear" and noted its consideration of the presentence investigation report and appellant's statement that he was employed and current on his child support payments. The court explained that it was mindful of the principles and purposes of sentencing under R.C. 2929.11, as well as the presumption of community control for fourth degree felonies like the one to which appellant pled guilty. Notwithstanding the presumption, the trial court

5.

found that prison was appropriate in this case because appellant caused physical harm to S.C. and he had previously served a prison sentence. Consequently, the trial court ordered appellant to serve 18 months in prison for his domestic violence conviction.

{¶ 10} Two weeks later, on May 11, 2021, appellant filed his timely notice of appeal.

## B. Assignment of Error

{¶ 11} On appeal, appellant assigns the following error for our review:

Appellant was denied his right of allocution to address statements made by the prosecutor at the sentencing hearing.

## II. Analysis

{¶ 12} In his sole assignment of error, appellant argues that the trial court deprived him of his right of allocution at sentencing in not allowing him to respond to the state's suggestion that he had beat up S.C. the night before the sentencing hearing.

{¶ 13} The right of allocution is set forth in R.C. 2929.19 and Crim.R. 32. R.C. 2929.19(A) states: "At the [sentencing] hearing, the offender * * * may present information relevant to the imposition of sentence in the case. The court shall * * * ask the offender whether the offender has anything to say as to why sentence should not be imposed upon the offender." Further, Crim.R. 32(A) requires the trial court, at the sentencing hearing, to "(1) [a]fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a

6.

statement in his or her own behalf or present any information in mitigation of punishment."

{¶ 14} Crim.R. 32(A)(1) confers upon a defendant "an absolute right of allocution." *State v. Green*, 90 Ohio St.3d 352, 358, 738 N.E.2d 1208 (2000). "Trial courts must painstakingly adhere to Crim.R. 32" and "the Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *Id.* at 359-360. "The requirement of allocution is fulfilled when the court's conduct clearly shows the defendant and his counsel that each has a right to make a statement before sentence is imposed." *State v. Yates*, 195 Ohio App.3d 33, 2011-Ohio-3619, 958 N.E.2d 640, ¶ 19 (2d Dist.), citing *Defiance v. Cannon*, 70 Ohio App.3d 821, 592 N.E.2d 884 (3d Dist.1990). When the right of allocution is violated, the reviewing court must reverse the sentence and remand the matter for resentencing, unless the error was invited or harmless. *Id.* at ¶ 20, citing *State v. Campbell*, 90 Ohio St.3d 320, 326, 738 N.E.2d 1178 (2000). Under Crim.R. 52(A), harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights * * *."

{¶ 15} In the present case, both appellant and his defense counsel made statements at the sentencing hearing prior to the trial court's imposition of sentence. Thus, appellant was initially afforded his right of allocution. Notwithstanding this fact, appellant argues that the scope of his right of allocution encompassed not only his right to make a

7.

statement in mitigation, but also an opportunity to respond to the new information that was introduced by the state after he and his defense counsel offered their statements. We agree with appellant that his right of allocution was violated when he was not permitted to address the new information.[1] *Yates* at ¶ 21. However, our analysis does not end there. Having found error, we next must determine whether the trial court's error was harmless in this case. *See State v. Brockington*, 6th Dist. Sandusky No. S-18-035, 2019-Ohio-1812, ¶ 10, citing *State v. Campbell*, 90 Ohio St.3d 320, 738 N.E.2d 1178 (2000), paragraph three of the syllabus ("Resentencing will not be required if the trial court's allocution error was invited error or harmless error.").

{¶ 16} In its decision in *Yates*, *supra*, the Second District confronted a similar issue. There, the trial court allowed Yates and his counsel to speak at the start of the sentencing hearing. *Yates* at ¶ 23. After hearing from Yates and his counsel, the trial court discussed a bondsperson's report, used the new information contained in the report to challenge Yates's statement, and imposed sentence without letting Yates speak again.

---

[1] We recognize that the trial court's refusal to allow appellant to respond to the state's comments at sentencing was predicated upon a legitimate concern that appellant might incriminate himself in his response. Nonetheless, the right of allocution is absolute. Therefore, the trial court's silencing of appellant, even if done for appellant's own good, was erroneous. Instead of making the decision for appellant, the trial court should have alerted appellant and his counsel to the danger of incriminating himself with a response to the state's comments and then allowed appellant to make the decision for himself following consultation with his counsel. This approach would have afforded appellant his right of allocution.

8.

*Id.* Construing these facts, the Second District found that the trial court's consideration of the report and failure to allow Yates to address the report violated Yates's right of allocution. In so finding, the court explained that a "trial court errs when it does not let the defendant address new information introduced and considered by the trial court at sentencing." *Id.* at ¶ 21, citing *State v. Castle*, 4th Dist. Lawrence No. 03CA24, 2004-Ohio-1992, ¶ 9, and *State v. Sanders*, 8th Dist. Cuyahoga No. 81450, 2003-Ohio-1163, ¶ 13.

{¶ 17} Upon consideration, we find *Yates* factually distinguishable from this case. Indeed, at the sentencing hearing in this case, the state introduced the new information regarding appellant's alleged act of domestic violence into the record after appellant finished his statement. Upon hearing this new information, the trial court refused to explore the matter further, and refused to allow appellant to respond to the accusation out of concern that appellant would incriminate himself. More significantly, at no point did appellant or his counsel insist upon responding or object to the trial court's failure to allow a response.

{¶ 18} In contrast, the trial court, not the state, introduced the new information in *Yates*. This distinction is material insofar as it supports a logical conclusion that since the trial court introduced the information it therefore *considered* the new information in fashioning its sentence. On the other hand, the state's introduction of new information does not lead to such a conclusion.

9.

{¶ 19} The trial court in this case, unlike in *Yates*, did not obviously consider the new information when deciding upon an appropriate sentence. As noted in our recitation of the facts, the trial court indicated its intent to "focus the attention here" and went on to state that it was "going to be very careful, very clear." Immediately thereafter, the trial court indicated it's consideration of the presentence investigation report and appellant's statement in the context of fashioning an appropriate sentence. The court never mentioned the state's domestic violence allegation as a basis for imposing its sentence. Instead, the court highlighted appellant's criminal history, which included other domestic violence convictions and violations of temporary protection orders.

{¶ 20} In *Yates*, the Second District was careful to note that a trial court's failure to allow a defendant to respond to new information at sentencing constitutes harmless error "when the defendant does not object to the new information or if the court's reasons for the enhanced sentence are unrelated to it." *Id*. at ¶ 22, citing *State v. Clark*, 3d Dist. Crawford Nos. 3-05-14 and 3-05-20, 2006-Ohio-1421, ¶ 7. Here, appellant did not object to the new information referenced by the state and the record is devoid of any evidence which demonstrates the trial court's sentence was based upon the new information. Unlike in *Yates*, the record in this case reflects the trial court based its sentence on the facts of the current domestic violence offense and appellant's criminal history. Consequently, we find that although the trial court erred in refusing to allow appellant to

10.

address the new information, such error did not impact appellant's sentence and was therefore harmless.

{¶ 21} Accordingly, appellant's sole assignment of error is not well-taken.

### III.    Conclusion

{¶ 22} In light of the foregoing, the judgment of the Wood County Court of Common Pleas is affirmed.  The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.